Jackson v. The State.

JOHN JACKSON v. THE STATE.

Under our Statute, which provides that prosecutions against an attorney for certain offences "may be instituted by motion or information of two or more practicing attorneys," held that a defendant who appeared and answered to a motion made by but one attorney, waived the objection.

It seems that a Court may, without such information, protect itself, its suitors, and the administration of justice against the malpractices, abuses, &c., mentioned in the 5th and 8th Sections of the Act of 1846.

In the absence of special provisions the power of removal is, from its nature, commensurate with the power of appointment.

The power of removal rests upon grounds distinct from contempts.

Where, in a prosecution against an attorney, the jury embraced two grounds in their finding, one a contempt, and the other malpractice, and the Court proceeded to judgment without it appearing upon which of the grounds, in so far as the judgment was founded on the first ground it was error.

Applying abusive and opprobrious epithets to a Judge in vacation cannot be considered " a contempt involving fraudulent or dishonorable conduct, or malpractice," within the meaning of our Statute.

In a special verdict, as follows: "The jury find from the testimony that defendant was retained as an attorney at law by James B. McMahon in a case in Justice Dewees' Court, of Sexton v. McMahon, before said defendant was retained by said Sexton." *Non constat* that he was retained by Sexton at all in that suit ; or if he was, he may have been first discharged by McMahon.

Besides the omission to find the act to have been done with a corrupt motive or evil intent ; or repel the supposition that it may have been from inadvertence, or some excusable or justifiable cause, is fatal to the judgment,

Where the jury have found a special verdict, all the facts and circumstances essential to constitute the offence must be found in order to support the judgment.

Error from Sabine.    Tried below before Hon. A. W. O. Hicks.

Proceedings were instituted in the District Court of Sabine county against plaintiff in error, an Attorney at Law, upon a motion made by J. M. Ardrey, also an Attorney of the Court,

(and by him alone) setting forth several charges, all of which were abandoned by the prosecution but two, which were :

1st. That John Jackson a practicing attorney, &c., in the county, &c., in the month of July, A. D. 1856, did say, " that the Hon. A. W. O. Hicks, Judge of the 5th Judicial District of the State of Texas, was a God damned corrupt and perjured scoundrel, and that as a Judge he made up his decisions out of Court, and that he, the said John Jackson, could establish the fact."

2d. That after J. B. McMahon (upon whose affidavit the charges are preferred) had retained said Jackson to defend a suit brought against him in Justice Dewees' Court by F. B. Sexton, the said Jackson had abandoned the defence of such suit and accepted a retainer from Sexton, and prosecuted the same for him, Sexton. The matters thus charged against the defendant below, are alleged to be malpractices by him as an attorney at law, and criminal practices against the peace and dignity of the State of Texas, and contrary to his duty as an attorney at law, &c.

Upon this motion, a rule was entered and served upon Jackson, requiring him to show cause why his name should not be stricken from the roll of attorneys, his license revoked, &c.

Jackson answered on oath, as follows, to these charges :

" And now comes the defendant, John Jackson, and answering to rule to show cause why he shall not be stricken from the roll of attorneys, and fined for contempt of Court, &c. In answer to first charge in affidavit of James B. McMahon, saith that respondent has been a resident citizen of Texas some four years, is forty-five years of age, and the most of the time he has resided in Texas has been engaged in the practice of law, residing at Milam in said county ; that he is, and has been for over three years an elector, legally qualified to vote for County, District and State Officers ; that in 1856, saw and read the proclamation of the Governor of the State of Texas, ordering an election for Judge of the 5th Judicial Dis-

trict of said State, to fill the vacancy occasioned by the resignation of the Hon. A. W. O. Hicks; that respondent learned that Mr. Richard S. Walker and A. W. O. Hicks were opposing candidates for such office; that the merits and demerits of said candidates were frequently and often warmly discussed by the electors of such District, with whom respondent mingled, and in which discussions he took an active part, zealously supporting Walker and opposing said Hicks; that a short time previous to the election the said candidates came to Milam, and at a public meeting addressed the electors present, and others, upon the subject of the said election, and their claims upon the suffrages of the people for such office.  About which time the feeling among the people upon the subject of the said election ran pretty high, and there was considerable excitement.  A short time after which an altercation took place between respondent and the said affiant, James B. McMahon; that said McMahon remarked that Walker had acted the damned dog.  Which respondent resented, vindicating the said Walker and condeming the said Hicks as unfit for the office of Judge, which unfitness respondent contended was evidenced by the course said Hicks had pursued in fining Walker & Oliphant and Richard S. Blackburn for contempt of Court; that much was said on both sides, all and every word of which respondent can't now recollect, but is confident that he never at any time made use of the expressions imputed to him by affiant McMahon, to-wit: that the Hon. A. W. O. Hicks, Judge of the 5th Judicial District of the State of Texas, was a God damned corrupt and perjured scoundrel, and that as a Judge he made up his decisions out of Court, and that he could establish the fact.  Respondent thinks that at the time of said altercation, Jesse T. Scruggs, Milton J. Porter and George S. Williams were present.

To second charge respondent says that in the case of Sexton v. McMahon, before the said Justice Dewees, he, respondent, was not retained by said McMahon, but on the contrary

was retained by said Sexton, of which said McMahon had full knowledge, and applied to respondent as the attorney of said Sexton, requesting him, respondent, to consent to a continuance of the cause."

The jury returned the following special verdict : "We, the jury, find that said defendant did use of and concerning A. W. O. Hicks, as Judge of the District Court, and in relation to the judicial action of said Judge in Court, the following language, to-wit : "That Judge Hicks was a God damned corrupt and perjured scoundrel, and that as a Judge, he made up his decisions out of doors, and he could prove it; also, the jury find from the testimony, that defendant was retained as an attorney at law by James B. McMahon in a case in Justice Dewees' Court, of Sexton v. McMahon, before the said defendant was retained by said Sexton." Upon this verdict the Court gave judgment against defendant, striking his name from the roll of attorneys, revoked his license, and rendered judgment against him for costs.

*T. J. Jennings* and *R. S. Walker*, for plaintiff in error.

*Attorney General*, for the State.

WHEELER, J. The Statute (Act of 1854, p. 118, Sec. 1,) provides that any prosecution under the 5th or 8th Sections of the Act to which this is an amendment, (Hart. Dig., Art. 56, 59,) " may be instituted by motion or information of two or more practicing attornies ;" and it is objected that the motion in this case is signed by but one. It is to be observed, however, that the defendant appeared and answered to the motion without objection to the form of the proceeding. This must be deemed a waiver of the objection, unless it be a matter so vital to the proceeding that it could not be waived; and that, it is conceived, is a proposition which cannot be

maintained. The objection goes only to the form of the pro-
ceeding ; not to the substance of the accusation ; and it is not
perceived that there is anything in principle to prevent the
defendant from waiving it, if he saw proper. If the objection
had been taken, it might have raised the question whether it
is competent for the Court to deprive an attorney of his license
for any of the causes mentioned in the 5th or 8th Sections of
the Act amended, unless two attorneys of the Court would
volunteer to institute a prosecution. And if that question
were presented, we should hesitate to hold that the Court
would be powerless to protect itself and suitors, and the ad-
ministration of justice, from any malpractices or abuses an at-
torney might perpetrate ; or that the Court was under the
necessity of admitting one to retain and exercise the privileges
of an attorney of the Court, who had been guilty of a gross
abuse of his privilege, or had been convicted of an infamous
crime. The 5th Section of the amended Act would seem to
forbid such a supposition. It provides that no person con-
victed of certain crimes therein enumerated shall be capable
of obtaining a license to practice as an attorney ; and if li-
censed, any Court of record, in which such person may prac-
tice, shall, on proof of his conviction of such crime, strike his
name from the roll of attorneys.

It will not be contended that the Court before whom the
conviction took place might not thereupon cause his name to
be stricken from the roll of its attornies, without further proof
or proceedings to ascertain the fact of the conviction. It has
been truly said that, as a class, attornies are and have always
been the intrepid vindicators of individual rights, and the
fearless asserters of the principles of civil liberty, existing
where alone they can exist, in a government not of parties or
men, but of laws. As a class they well deserve the appella-
tion of an enlightened, chivalrous and honorable profession.
Individuals of the class may, and sometimes do forfeit their
professional franchise by abusing it ; and a power to enforce

the forfeiture must be lodged somewhere. Such a power is indispensable to preserve the administration of justice.

In the absence of special provision to the contrary, the power of removal is, from its nature, commensurate with the power of appointment; and it has accordingly been every where held to be the province of the Judges to withdraw the privileges of attorneys where they abuse those privileges. (Austin's case, 5 Rawle. 191, 203–4; Dillon v. The State, 6 Tex. R. 55; Bac. Ab. Tit. "Attorney;" Smith v. The State, 5 Yerger, 228.)

The end to be attained by removal, it is said, is not punishment, but protection. (5 Rawle. 204.) The power rests upon grounds distinct from that of punishment for contempt. It may be properly exercised where there has been no contempt, as in the cases mentioned in the 5th Section of the Statute before referred to. It is one thing to remove from office for unfitness, and another to punish for contempt. (Id.) The Act of 1854 embraces both classes of cases; and doubtless both may be proceeded upon together, and may indeed be inseparable in many cases. But there is no necessary connection between a contempt of Court and malpractice. The present appears to have been intended as a proceeding under the Statute; and had it been objected that it did not conform to its requirements, it might have been a question whether it could be maintained. In the case of Dillon v. The State, (6 Tex. R. 55,) the proceeding was instituted by two attornies; but the Court, having had its attention called to the accusation, appears to have proceeded upon its own information derived from an examination of the records before the Court; and no question was made of the regularity of the proceeding. But it will suffice to dispose of the objection, that as the defendant answered without making it, we think it must be considered as waived.

The defendant was proceeded against upon several grounds, but the finding of the jury is responsive to but two, and it is

plainly inferable from the charge of the Court, that the evi-
dence related to but two. The others were abandoned or un-
supported by evidence. It does not appear upon which of the
grounds embraced in the finding the Court proceeded to judg-
ment. But as the finding was upon issues submitted by the
Court, it is evident both were regarded as material, and the
judgment doubtless proceeded upon both. In this there was.
error. The first, if a matter cognizable by the Court in such
a proceeding, was so only as a contempt; and the Statute
(Act of 1854, p. 118, Sec. 2,) declares that "no Court shall
strike an attorney or counsellor at law from the rolls for con-
tempt, unless it involve fraudulent or dishonorable conduct, or
malpractice." The conduct here referred to must mean con-
duct as an attorney, not merely as a person. It is only his
official conduct with which the Court is concerned. It is the
prostitution of his office to corrupt practices that can bring
him in collision with his professional fidelity. Applying op-
probrious and abusive epithets to the Judge, in vacation, can-
not be considered "a contempt involving fraudulent or dis-
honorable conduct or malpractice," within the meaning of the
Statute. In so far, therefore, as the action of the Court was.
founded on the first ground embraced in the finding, it is un-
sustained. Can it be maintained upon the remaining ground,
the alleged malpractice? Upon this question there may be
more doubt. It is a grave charge; and one which, if estab-
lished, would undoubtedly justify the expulsion of the attor-
ney. It involves a violation of his official oath; and it has
been truly said, the attorney who deliberately violates the
sanctions of a lawful oath is unworthy of further confidence;
society has no other hold upon him. If guilty of corrupt
practices in his official conduct, his guilt can be no less than
this. Does the finding of the jury, or even the accusation
upon which the finding is based, warrant the legal conclusion
that he is thus guilty? We think it does not. The special
verdict is exceedingly vague and unsatisfactory. It simply

finds that he was retained by McMahon before he was retained by Sexton. *Non constat* that he was retained by Sexton at all in that suit; or if he was, he may have been first discharged by McMahon. But the gravest omission is, that it does not find the act to have been done with a corrupt motive or evil intent; or repel the supposition that it may have been from inadvertence, or some excusable or justifiable cause. The corrupt motive, or fraudulent intent, is of the very essence of the offence, and ought to have been found by the jury, if they deemed the evidence to warrant them in so finding. Would the Court be warranted in drawing the conclusion, as a legal consequence of the finding, that the accused acted corruptly, in deliberate violation of his official oath? We think not. And it is well settled that, where the jury have found a special verdict, all the facts and circumstances essential to constitute the offence must be found, in order to enable the Court to give judgment. For the Court cannot supply a defect in the statement made by the jury on the record by any intendment or implication whatever. (1 Chit. Cr. L. 644; Commonwealth v. Call, 22 Pick. 509.) This is the well settled rule even in civil cases. (Bac. Ab. Tit. "Verdict.") The Court cannot look to matters in the record outside of the verdict, as a basis on which to render judgment. And accordingly this Court has held that where a jury has intervened, and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment. It is upon what the jury have found—not what they might have found—that the Court proceeds to render judgment. (Claiborne v. Tanner, 18 Tex. R. 68.)

But if we were at liberty to look to matters outside of the verdict, there being no statement of facts, there is nothing outside of the verdict to support the judgment.

If, however, the finding of the jury upon the several grounds embraced in it were less defective, we might well hesitate to affirm the judgment upon that finding alone, when it is mani-

fest that the Court proceeded upon other grounds. We cannot say what influence the finding upon the first charge may have had upon the mind of the Court. The Court was not under a legal necessity of striking the attorney from the rolls absolutely, though satisfied that he had acted improperly in respect to the alleged retainer. The judgment might have been one of suspension rather than absolute expulsion, depending on the discretion of the Court to be guided by the degree of professional delinquency shown by the evidence. And we can not say that had the judgment been rested alone on the charge of malpractice, this might not have been the result. It would seem, therefore, that the proceeding upon the contempt, in a case of this nature, where the judgment is not merely the conclusion of law upon the verdict, but in some degree matter of judicial discretion, ought to occasion a reversal of the judgment.

In the view we have taken of the case, it does not become necessary to enter upon an examination of the doctrine of contempts. We are of opinion that the judgment was not warranted by the verdict ; and that it be therefore reversed and the cause remanded.

Reversed and remanded.