## J. L. SCOTT v. THE STATE OF TEXAS.

### No. 1599.

**Attorney—Disbarment on Conviction of Felony—Pardon.**—After the unconditional pardon of an attorney for a conviction of felony, such conviction can not serve as a basis for a proceeding under article 226 of the Revised Statutes to disbar him from the practice of law.

ERROR from Bosque.   Tried below before Hon. J. M. HALL.

*J. L. Scott*, pro se.—A pardon restoring the rights of citizenship places the party where he stood before conviction.   The effect of the conviction is cancelled.   Ex Parte Garland, 4 Wall., 344; Osborne v. United States, 1 Otto, 474; Benton v. Sawyer, 4 Wall., 333; In re Spencer, 5 Saw., 198; 12 Opinions Attorney-Gen., 81; Young v. Young, 61 Texas, 191.

*C. A. Culberson*, Attorney-General, and *Frank Andrews*, Assistant Attorney-General, for defendant in error.— 1.   This proceeding against plaintiff in error is penal in its nature, and can not be tried or appealed as a civil case, or determined by a court having civil jurisdiction only.

2.   It was conclusively shown that the plaintiff in error had been duly and legally convicted of a felony.   For this the law provides that he may be disbarred.   The law does not provide that a pardon shall be a bar to such a proceeding.   The law requires that a person licensed to practice law shall be of good moral character.   The conviction for swindling is conclusive that he is not.   The good moral character is not granted in a pardon.   The pardon is no answer to an action to disbar one convicted of a felony.

STEPHENS, ASSOCIATE JUSTICE.—At a former day of this term, upon motion of the Attorney-General, this writ of error was dismissed for want of jurisdiction. The cause was then removed by writ of error to the Supreme Court. In accordance with the opinion of that court rendered January 15, 1894 [86 Texas, 321], it has been returned to this court for decision on the merits. Before announcing that decision, we deem it proper to state our views upon the question of jurisdiction involved. It is perhaps to be regretted that this was not done when the writ was dismissed, as the Supreme Court seems to have misapprehended the ground upon which we hold this court to be without jurisdiction.

The opinion of the Supreme Court, after stating that "the ground of the motion to dismiss was that this is a criminal case," and after quoting from Abbott's Law Dictionary the definition of a "criminal case," proceeds to demonstrate that this is not a criminal case, and concludes, therefore, that the motion should not have been sustained. True, the motion did allege it to be a criminal case, but the ground was better stated therein, as follows: "The charge and action against the said Scott is penal in its nature, and can not be appealed nor heard as a civil case." The judgment of dismissal did not indicate the ground. The Constitution, in defining the jurisdiction of this court, makes no reference to criminal cases. It does not, in terms, include all cases other than criminal, but expressly limits the jurisdiction to "civil cases." Amended Const., art. 5, sec. 6; 85 Texas, 623. It would seem, then, that a less circuitous method of determining the question of jurisdiction would be to inquire whether this is a civil case, within the meaning of those words in the amended Constitution.

Turning to the law dictionaries, we find a civil action at common law to be thus defined: "An action which has for its object the recovery of private or civil rights, or compensation for their infraction." 1 Bouv. Law Dic., 317; And. Law Dic., 26. Can it be said that a proceeding like this—to disbar an attorney—has any such object in view? This question is answered by the above opinion of the Supreme Court, as follows: "But the object of this proceeding is not to punish him for his misconduct, but merely to protect the court and the public against a person already licensed, who has shown himself unfit to be intrusted with the high and responsible duties of an attorney." It would then seem as difficult to bring this proceeding within the technical definition of a civil as of a criminal case. It does not follow, that because it is not technically a criminal case, it must, in strict law language, be a civil case. As said by the Supreme Court of Indiana, in construing these words in the Constitution of that State, "Not every case which is not a criminal case is a civil one." Railroad v. Heath, 9 Ind., 558, where the authorities are collated in support of the proposition that the definition of "civil case,"

in the common law sense, was the one intended by the use of that term in the early Constitutions of this country.

Such a proceeding seems, as has often been ruled, to partake of the nature of both; and in analogy to the old common law action partaking both of the nature of a real and personal action, may not inappropriately be termed "mixed." It is one of those cases which, with reference to civil and criminal jurisdiction, the courts have often found difficulty in classifying. For other instances, take forfeited bail bond cases, which, after much deliberation, were finally classed as criminal, so far as appellate jurisdiction is concerned, by a majority both of the Supreme Court and the Court of Criminal Appeals. Hart v. The State, 13 Texas Cr. App., 555; Houston v. The State, 13 Texas Cr. App., 558; The State v. Norrell, 53 Texas, 427; Aber v. Warden, 49 Texas, 377.

The case last cited was a suit to enjoin the sale of property under a judgment on a forfeited bail bond; and yet the Supreme Court dismissed the appeal for want of jurisdiction, holding it to be merely incidental to the criminal case, and that its purpose might have been accomplished by motion in the court where the judgment had been made final on the bond. The judgment brought here for revision on writ of error but declares, in a proceeding in the name of the State to protect her courts and people, the consequences of a felony conviction, as will more fully appear when we come to consider the case on its merits; and this result, it seems, might have been attained in a summary way in the court where the conviction was had, without further proof or proceedings. Jackson v. The State, 21 Texas, 672; The State v. Robinson, 26 Texas, 371.

The real question at issue, however, is not whether a proper classification would take this case out of the domain of criminal jurisdiction and place it within that of civil jurisdiction, but whether it is a civil case within the meaning of those words as used in the amended Constitution creating this court and defining its jurisdiction. This question is conclusively settled, we think, by a well established, if not universal, rule of construction, which has been too long followed in this State to be now questioned. That rule may be stated thus: Where a statute or Constitution, after being once construed by the court of final jurisdiction, has been re-enacted without material change, such construction becomes a part of the new law or Constitution. Suth. on Stat. Const., secs. 255, 256; Endl. on Interp. Stats., secs. 367–371, and numerous cases cited in footnotes. The following are some of the Texas cases recognizing the rule: Ennis v. Crump, 6 Texas, 34; Munson v. Hallowell, 26 Texas, 476; Trigg v. The State, 49 Texas, 645; Morgan v. Davenport, 60 Texas, 230; Brothers v. Mundell, 60 Texas, 240; Timmins v. Bonner, 58 Texas, 554; Rowe v. Spencer, 70 Texas, 78.

In the case last cited it is even held that where the Supreme Court had once construed certain articles of the Revised Statutes, and a session of

the Legislature occurred after the decision was made without making any change in the articles construed, it must be inferred that this construction is that which the Legislature intended they should receive in the future.

In the case of Timmins v. Bonner, supra, Justice Stayton uses this language: "The provisions of the Constitution conferring probate jurisdiction upon the County Courts being, in reference to the matters now under consideration, no broader than were they under the former law, and almost identical in language, a consideration of cases adjudged under the former law will show the construction put upon that law by this court, and such construction the makers of the Constitution are presumed to have had in view at the time of its adoption." The same rule has been applied to statutes borrowed from other countries, the construction there placed upon them being adopted with them. 60 Texas, 230, 240; 26 Texas, 475. In the last case cited, the court say: "Such interpretation is to be as much regarded in determining its import and meaning as if it were expressly so declared in the statute itself."

Taking this well established rule of interpretation as our guide, let us consider the effect of the decision in case of Tunstall v. The State, 51 Texas, 81, so recently overruled by the opinion of the Supreme Court in this case. That case was a proceeding instituted in the District Court to disbar an attorney, and arose under the Constitution of 1876, which, for the first time in the history of Texas, created two appellate courts of last resort— the Supreme Court and the Court of Appeals — defining the jurisdiction of each. In defining the jurisdiction of the former, this language was used: "The Supreme Court shall have appellate jurisdiction only, which shall be coextensive with the limits of the State, but shall only extend to civil cases of which the District Courts have original or appellate jurisdiction." Const., art. 5, sec. 3; 85 Texas, 619.

Did the Supreme Court, in that case, interpret this language in reference to its application to a proceeding to disbar an attorney? Let the Chief Justice, who delivered the opinion in that case, answer. "Upon the threshold of any inquiry as to the correctness of the judgment of the District Court in this proceeding, we are confronted by the question whether this court has jurisdiction of, or can take cognizance of, the appeal. And after the careful consideration which the importance of the question demands, we are constrained to say that the present Constitution of the State does not authorize an appeal to this court in a proceeding of this character."

After proceeding to consider the section and article in question, that part of the opinion concludes: "It will suffice for the present inquiry for us to say, that if this is a case, in the sense of the Constitution, it certainly is not a civil case, but is unquestionably a criminal or quasi criminal one, of which we have no jurisdiction." In further support of the conclusion that the words "civil cases" were not intended by the framers of the

Constitution to include a proceeding to strike an attorney from the rolls, the opinion then calls attention to the language of the statute on that subject in force when the Constitution was adopted as being "inappropriate to designate a civil case or action." This was evidently done for the purpose of showing how this kind of proceeding was regarded, as manifested by legislation, when the makers of the Constitution, with that fact in contemplation, used these words.

It would be doing violence to the explicit language of the opinion, as well as injustice to the learning and ability of the Supreme Court as then constituted, to construe their decision in the Tunstall case as holding that a previously enacted statute effectually denied jurisdiction which the Constitution subsequently adopted gave, especially when it was held in that case that the statute which in terms expressly recognized the right of appeal in such cases to the Supreme Court, had been repealed by the adoption of the Constitution. This decision was rendered while the Legislature which adopted the Revised Statutes was in session, and this provision of the old law thus held to have been abrogated was left out; but nearly if not quite all the other distinguishing features of the old statute alluded to in that opinion were retained, except that "complaint" was substituted for "information." Pasch. Dig., arts. 172–177; Rev. Stats., arts. 226–233.

It is perfectly clear, we think, that the Supreme Court in the Tunstall case decided that whatever else the words "civil cases," as used in the Constitution of 1876 in defining the appellate jurisdiction of the Supreme Court, may or may not have included, they did not include a proceeding to disbar an attorney. This decision stood unreversed and this construction unchallenged for more than ten years, when by an amendment to this article of the Constitution the Courts of Civil Appeals were provided for, with substantially the appellate jurisdiction in the first instance which previously belonged to the Supreme Court, augmented by appeals and writs of error in civil cases from the County Courts.

In defining this jurisdiction the language which had already, as we have seen, received judicial construction, was, without material change, employed. It reads: "Said Courts of Civil Appeals shall have appellate jurisdiction coextensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." The only difference perceivable between this language and that previously construed is that "all" precedes "civil cases." As the whole includes all its parts, we deem this change unimportant. It would have meant precisely the same with "all" omitted. Endl. on Interp. Stats., secs. 378–382. The question is not whether the decision in the Tunstall case was or was not originally erroneous. It has passed into the Constitution as amended, and to overrule

it now, it seems to us, is to overrule the Constitution itself. The Constitution, as amended, with this decision incorporated, in effect, says that by "civil cases" is not meant a proceeding to disbar an attorney. We see no escape from this conclusion. The constraint upon our action, therefore, emanates from a higher source than merely the decision in the Tunstall case. In deference, however, to the mandate of the Supreme Court, we proceed now to express our opinion on the merits of the case.

The judgment of disbarment is founded upon a proceeding under article 226, Revised Statutes, reading: "No person convicted of a felony shall receive license as an attorney at law; or if licensed, any court of record in which such person may practice shall, on proof of a conviction of any felony, supersede his license and strike his name from the roll of attorneys." The case was tried before a jury, and the record contains their findings on special issues submitted, and also conclusions of law and fact filed by the district judge. From these findings both by the jury and judge, as well as from the statement of facts, it appears that plaintiff in error had been convicted of a felony, but, immediately thereafter, pardoned by the Governor, several years before this proceeding was instituted against him. We are of opinion, that after he received an unconditional pardon the record of a felony conviction could no longer be used as a basis for the proceeding provided for in article 226. This record, when offered in evidence, was met with an unconditional pardon, and could not, therefore, properly be said to afford "proof of a conviction of any felony." Having been thus cancelled, all its force as a felony conviction was taken away. A pardon falling short of this would not be a pardon, according to the judicial construction which that act of executive grace has received. Ex Parte Garland, 4 Wall., 344; Knote v. United States, 95 U. S. 149, and cases there cited; Young v. Young, 61 Texas, 191.

Cases may be found holding that a pardon does not operate as a bar against a proceeding to strike an attorney from the rolls on account of the professional misconduct involved in the transaction which culminated in the conviction. Penobscot Bar v. Kimball, 64 Me., 140; In re ———, an attorney, 86 N. Y., 563. In these cases the proceedings to disbar were not founded on statutes like ours, declaring the effect of a felony conviction, but upon facts showing professional misconduct. Where the proceeding, as in this case, depends alone upon the felony conviction, and that is wiped out by a pardon, the whole case falls. Waiving the question of jurisdiction, as concluded by the mandate of the Supreme Court, so far as this case is concerned, we decide that the judgment should be reversed, and here rendered on the facts found by the special verdict, in favor of plaintiff in error.

*Reversed and rendered.*

Delivered February 28, 1894.