UNITED STATES ex rel. HALLETT v. GREEN.

(Circuit Court, D. Colorado. March 23, 1898.)

1. DISBARMENT OF ATTORNEY—LIBEL IN BRIEF—POWER OF CIRCUIT COURT.

An attorney who writes, files, and publishes in the court of appeals a brief containing that which amounts, in law, to a false, scandalous, and malicious libel upon the presiding judges of the circuit court, may be disbarred therefor by the circuit court.

2. SAME—REAFFIRMING LIBEL—ADEQUATE PUNISHMENT.

Where an attorney, in his official character, has written and published a false, scandalous, and malicious libel upon a judge of the court of which he is a sworn officer, and, when called upon to show cause why he should not be disbarred therefor, reaffirms such libel both in written answer and oral argument, there is no punishment the court can inflict that will afford an adequate remedy but disbarment.

3. SAME—STATE AND FEDERAL COURTS.

When the highest court of a state has revoked an attorney's license to practice, it ought to follow, as a matter of course, that his license should be revoked in the federal courts of that state.

Henry V. Johnson and Greeley W. Whitford, U. S. Atty., for complainant.

Thomas A. Green and J. M. Washburn, for defendant.

GARLAND, District Judge. This is a proceeding to disbar the defendant, Thomas A. Green, from practicing as an attorney at law or solicitor in chancery in the circuit court of the United States for the district of Colorado. The information filed by the relator charges that the said defendant, Thomas A. Green, did, on the 5th day of February, A. D. 1896, file in this court an amended bill of complaint in a case wherein Thomas D. Kelley et al. were complainants and Charles Boettcher et al. were defendants, in which said amended bill there was scandalous and contemptuous matter. The matter set forth in the information as being scandalous and contemptuous in said amended bill of complaint will be found in the case of Kelley v. Boettcher, 27 C. C. A. 177, 82 Fed. 795, and in Kelley v. Boettcher, 85 Fed. 55, and no useful purpose can be served by again repeating the same in this opinion. The information also charges that the defendant, on the 31st day of July, 1897, filed two certain briefs in two certain causes pending in the United States circuit court of appeals for the Eighth circuit, numbered, respectively, on the docket of said court, "870" and "871," and entitled, respectively, "Thomas D. Kelley et al. vs. Charles Boettcher et al.," "Michael Curran et al. vs. John F. Campion et al.," and on August 11, 1897, filed a brief in a certain other cause in said circuit court of appeals, numbered "872," and entitled "James H. Donovan et al. vs. John F. Campion et al.," in which said briefs said Thomas A. Green inserted certain scandalous and contemptuous matter, which is set out in full in said information. The language set out in the information as having been inserted in the briefs filed in the court of appeals for the Eighth judicial circuit is referred to and characterized in Kelley v. Boettcher, 27 C. C. A. 177, 82 Fed. 796. For the insertion of the scandalous and contemptuous matter in the amended bill filed in this court, this court struck the bill from the files, and in its action in so doing was

fully sustained by the court of appeals in Kelley v. Boettcher, 85 Fed. 55. On a motion to strike the briefs of the defendant, Thomas A. Green, from the record in the court of appeals in each of the three cases hereinbefore mentioned, that court, on September 15, 1897, made an order whereby said court struck said briefs from the files of said court, and by the same order struck from the record in each of said causes the name of the said defendant, Thomas A. Green, and ordered that said Thomas A. Green be no longer heard orally or by brief in said causes.

This proceeding was commenced October 28, 1897. The defendant, by his answer, in this proceeding, admits that he inserted in the amended bill of complaint filed in this court the matter set forth in the information filed herein, and also admits that he used the language set forth in the information in the briefs that he filed in the three several causes pending in the court of appeals. No evidence was taken on the hearing of this proceeding, except that copies of briefs filed in the court of appeals, and copies of the record of the cases wherein said briefs were filed, were introduced as exhibits to the several pleadings. The defendant, in order to defeat this proceeding, insists that he cannot be disbarred by this court for the matters set forth in the information, for the reasons: First. That the matters set forth in said information constitute contempts committed in the courts where the amended bill was filed, and where the briefs were filed, and that, under the laws of the United States, he cannot be disbarred for the commission of a contempt; that the only punishment that can be imposed for a contempt is either a fine or imprisonment. Second. That, so far as the matter contained in the briefs which were filed in the court of appeals is concerned, it constituted a contempt committed in that court, and for which no other court has any jurisdiction or authority to impose a punishment. Third. That, if this court has jurisdiction and authority to consider said matters in a proceeding to disbar the defendant, then that the matter set forth in the amended bill filed in this court does not constitute such an offense as would warrant any court in disbarring the defendant; and that, as to the matters contained in the briefs filed in the circuit court of appeals, defendant was clearly justifiable and excusable in using said language, by reason of the record in the cases in which said briefs were filed.

Before passing to consider the points raised by the defendant, it may be well to say that the court of appeals, in Kelley v. Boettcher, 27 C. C. A. 177, 82 Fed. 794, disposed of the question as to whether the matter contained in the briefs filed in that court was legitimate criticism of the rulings made by the lower court in the cases in which said briefs were filed, and, in disposing of said question, used the following language:

"This brief contains 267 pages. Instead of being confined to a discussion of the questions arising on the record, and proper for consideration on this appeal, it contains page after page of denunciation and abuse of the two judges who decided these demurrers. It goes far beyond criticism or denunciation of the decisions. It is personal in its attacks upon the intelligence, integrity, and character of the judges. There are in it allegations of matter of a personal nature, in no manner connected with or suggested by anything in the record, and insinuations and char-

ges against those judges in language which, speaking mildly, is not common among gentlemen. That this is an offense against the proprieties of professional life is not open to question. The matter thus poured into the brief is irrelevant and grossly scandalous. No self-respecting court can, for a moment, think of tolerating such conduct."

While this court can add nothing to the force of the language used by Justice Brewer above quoted, it may be said that it has carefully examined the language used in the briefs filed in the court of appeals, and also the entire record of the cases in which the briefs were filed, with a determination only to do justice; and from such an examination this court cannot find that the language was pertinent and material to the discussion of the questions presented by the record, in any view in which they may be considered. It also appears from such examination that there is no evidence to sustain the truth of the assertions made, and that they were made without probable cause. This being so, it follows that the libelous language was also malicious, and in no sense privileged or justifiable.

The filing of the amended bill in this court, containing the scandalous matter set forth in the information, was a contempt committed in this court, for which respondent could have been fined or imprisoned in addition to striking the bill from the files. It was the misbehavior of an officer of this court in an official transaction, and clearly a contempt, within the provisions of section 725 of the Revised Statutes of the United States, which reads as follows:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: provided that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice; the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

It is the opinion of this court that the matter inserted in the amended bill, while a contempt and punishable as such, was not such an offense as would warrant the court in disbarring the defendant.

This leaves the language used by the respondent in the briefs filed in the court of appeals as the only matter to be considered. In regard to that language, it is contended that it constituted a contempt only, and therefore could not be punished by any court except by fine and imprisonment, under section 725, Rev. St. U. S., above quoted, and not at all by this court, as this court has no jurisdiction to punish a contempt committed in another court. It is true that the only punishment for a contempt in the courts of the United States is fine and imprisonment. Ex parte Robinson, 19 Wall. 512; Rev. St. U. S. § 725. It is also elementary that no court has jurisdiction to punish a party for a contempt committed in another court. Ex parte Bradley, 7 Wall. 364.

But all these propositions may be conceded, and still it does not follow that the defendant may not be disbarred for the libelous language used in the briefs filed in the court of appeals. A proceeding to punish a party for a contempt and a proceeding like the one at bar are entirely independent and distinct proceedings,—the object

of the one being to punish the offender; that of the other, to protect courts, the legal profession, and the public at large from being compelled to associate and do business with persons who are unfit and unworthy to be intrusted with the high responsibilities and duties of the legal profession. Section 725, supra, while it has limited the punishment of contempts to fine and imprisonment, has not prohibited courts from disbarring attorneys in all cases mentioned in said section. In a proceeding to disbar, courts do not consider the question of contempt, but simply the question as to whether the offense of which the party is guilty renders him unfit to remain longer a member of the bar. All offenses punished by the laws of the United States are by law punished either by fine or imprisonment, but no one would be so bold as to say that a court could not disbar a convicted felon or one who has been convicted of a misdemeanor involving moral turpitude.

I do not understand Morrow, circuit judge, in Re Boone, 83 Fed. 948, to decide the contrary. If congress has taken away the power of the courts to disbar attorneys for all offenses enumerated in section 725 as contempts, merely because it has provided a punishment of fine and imprisonment, then, for the same reason, it has taken away the power of the courts to disbar for all the offenses enumerated and punished by the laws of the United States. To state such a proposition would seem to be sufficient to overthrow it. This is not a proceeding to punish respondent for a contempt committed in this or any other court. It is a proceeding which has for its object the prevention of the commission of any contempt or unprofessional conduct in the future. The case presents this state of facts: The respondent, as one of the sworn officers of this court, writes, files, and publishes, in his official capacity, in the court of appeals of this circuit, that which amounts in law to a false, scandalous, and malicious libel upon two of the presiding judges of this court, Judge Hallett and Judge Riner. The language used is not inserted in this opinion, for the reasons that it would make a book and also perpetuate a libel. When respondent is called upon to show cause why he should not be disbarred for the offense charged against him, he files a voluminous answer, wherein he affirms all that is said in the briefs, and at the hearing delivered an oral argument, wherein he excelled himself in bitterness of invective against the judges referred to. The respondent is not on trial for the language in his answer, nor for what was said orally, and these matters are only referred to for the purpose of showing that respondent stands not only unrepentant, but glories in the assumed character of defender of the rights of the bar and of free speech. It often happens that a lawyer, when exhausting his last remedy in the bitterness of defeat, will use language with reference to a judge that on sober reflection he would apologize for quickly; but it has seldom, if ever, happened, that a lawyer will, in a cool and deliberate manner, compose and write a libel on a judge, and forever after affirm its truth, with no evidence to support his assertion. This court was unable to discover the mental process by which respondent arrived at his conclusions until it read the learned and philosophical argument of

Mr. Washburn, wherein it appears that the language used by respondent, when stripped of expletives, is simply the "illogical deductions of the ratiocinative faculties." The trouble with this plea is that we are all responsible for our deductions, whether they are logical or illogical.

In regard to the general power of this court to disbar attorneys, the supreme court, in Bradley v. Fisher, 13 Wall. 354, said:

"The power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice. It is a power which should only be exercised for the most weighty reasons, such as would render the continuance of the attorney in practice incompatible with a proper respect of the court for itself, or a proper regard for the integrity of the profession. * * * Admission as an attorney is not obtained without years of labor and study. The office which the party thus acquires is one of value, and often becomes the source of great honor and emolument to its possessor. To most persons who enter the profession, it is the means of support to themselves and their families. To deprive one of an office of this character would often be to decree poverty to himself and destitution to his family. A removal from the bar should therefore never be decreed where any punishment less severe—such as reprimand, temporary suspension, or fine—would accomplish the end desired. * * * The obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers."

See, also, In re Boone, 83 Fed. 945; Ex parte Robinson, 19 Wall. 512; Ex parte Secombe, 19 How. 13; Ex parte Burr, 9 Wheat. 529; Ex parte Garland, 4 Wall. 378; Ex parte Wall, 107 U. S. 288, 2 Sup. Ct. 569; Randall v. Brigham, 7 Wall. 535; Austin's Case, 5 Rawle, 203; Ex parte Smith, 28 Ind. 47; Ex parte Biggs, 64 N. C. 202; Jackson v. State, 21 Tex. 673; Leigh's Case, 1 Munf. 468; In re Mills, 1 Mich. 392; In re Woolley, 11 Bush, 95, 111, 112; In re Philbrook, 105 Cal. 471, 38 Pac. 511, 884.

This being the law, and the facts being admitted, it only remains to determine what shall be the judgment of the court in this proceeding. The court has endeavored to find some remedy to be administered which would answer the purpose, and render disbarment unnecessary, but it is unable to do so. In determining this question, the court cannot shut its eyes to the fact that the respondent stands disbarred in the courts of the state of Colorado for similar offenses, as shown by the published decisions of the supreme court of Colorado, of which this court takes judicial notice. 3 Pac. 65. The proceedings in this case show that the proceedings in the state courts, although had many years ago, have had no effect upon the respondent in the way of reformation. The courts of the state are the avenues by which attorneys are admitted to practice. It is on certificate from the highest court of a state or some federal court that attorneys are admitted to this court. When the highest court of a state has revoked an attorney's license to practice, it ought to follow, as a matter of course, that his license should be revoked in the federal courts of that state. The record in this case discloses a poor return for the leniency indulged in by this court in allowing respondent to practice therein for 17 or 18 years after disbarment

by the highest court of the state of which respondent is a citizen. With a full appreciation of liberty of speech, the independence of the bar, and the dignity and self-respect of this court, I can see no other alternative than to enter judgment in this action disbarring defendant from any longer practicing in this court as attorney at law and solicitor in chancery; and it is so ordered.