## CAPLEY v. HUDSON. (No. 2701.)

(Court of Civil Appeals of Texas. Amarillo. June 2, 1926. Rehearing Denied June 30, 1926.)

1. **Fraud** ⊙—12—False promise and representation of landlord that he would improve farm leased, having induced tenant to rent premises and execute notes, were actionable (Rev. St. 1925, art. 4004).

Promise and representation of landlord that he would erect dwelling house on, and improve, farm leased, being material, and having induced tenant to rent premises and execute notes therefor, and being false, and made with no intention of being kept, were, in view of Rev. St. 1925, art. 4004, actionable, as lease vested leasehold in tenant, and transaction therefore was one regarding real estate.

2. **Venue** ⊙—8—Action for fraud, though not against public officer, may be brought in county where fraud was committed (Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 7; Rev. St. 1925, arts. 10, subd. 6, 1995, subd. 7; Acts 38th Leg. [1923] c. 159, § 2; Acts 39th Leg. [1925] c. 104 [Vernon's Ann. Civ. St. 1925, final title, §§ 23a–23m]; 2 Gammel's Laws, p. 1669).

In view of 2 Gammel's Laws, p. 1669; Acts 38th Leg. (1923) c. 159, § 2, and Acts 39th Leg. (1925) c. 104 (Vernon's Ann. Civ. St. 1925, final title, §§ 23a–23m) suit for fraud may be maintained under Rev. St. 1925, art. 1995, subd. 7, against one who is not a public officer in county where fraud was committed, despite difference between language thereof, and language of Vernon's Sayles' Ann. Civ. St. 1914, art. 1830, subd. 7.

3. **Statutes** ⊙—145, 167(1).

As no authority was given revising commission, under Acts 38th Leg. (1923) c. 159, to enact, amend or repeal existing law, it must be presumed that there was no intention on part of commission to enact, amend, or repeal any existing law.

4. **Statutes** ⊙—184.

The legislative policy is persuasive in the matter of doubtful statutory construction.

5. **Statutes** ⊙—181(1).

Fundamental rule of statutory construction is, in view of Rev. St. 1925, art. 10, subd. 6, to give effect to legislative intent.

Appeal from District Court, Lubbock County; Clark M. Mullican, Judge.

Action by O. G. Capley against Mrs. Bonnie W. Hudson. From a judgment sustaining defendant's plea of privilege, plaintiff appeals. Reversed and remanded.

Robt. H. Bean and Bean & Klett, all of Lubbock, for appellant.

Bledsoe, Woodward & Higgins, of Lubbock, for appellee.

JACKSON, J. This suit was instituted in the district court of Lubbock county, Tex., by O. G. Capley, the appellant, against Mrs. Bonnie W. Hudson, the appellee.

Appellant alleges that in October, 1924, he leased from appellee for the year 1925 a farm of 320 acres of land, situated in Lubbock county, for which he agreed to pay appellee $1,280, evidenced by his two promissory notes.

He pleads that it was understood and agreed that he should have possession of, grow agricultural products upon, and use and occupy, the farm with his family as a home during the period of the lease contract; that the land was not improved for occupancy and he refused to lease the land and execute the notes for the rent until appellee agreed, promised, and represented that she would erect on the premises a four-room residence, sheds, pens, well, and windmill before January 1, 1925, to enable him and his family to live upon and cultivate said farm during the year 1925; that said promises and representations were made to him in Lubbock county, Tex., and that he believed and relied on her promises and representations to place such improvements upon the premises, and that he would not have rented the farm nor executed the notes if such promises and representations had not been made; that appellee failed and refused to make said improvements on her land, for which reason he could not, and did not, cultivate, use, or occupy the farm; that said promises and representations were false, and made by appellee without any intention of being kept and performed, and, as a result of appellee's fraud and the breach of her contract, he sustained damages for which he seeks to recover.

The appellee filed her plea of privilege in the proper form, to which appellant replied by a controverting affidavit, alleging that he was entitled to maintain his suit in Lubbock county, because of the false promises and representations made by appellee to him in Lubbock county; that such promises and representations were material, and induced him to enter into the contract and execute the notes, and he refers to, and adopts, the allegations in his petition.

The plea of privilege was heard before a jury without a trial on the merits of the case, and at the conclusion of the hearing the court directed the jury to return a verdict for appellee on her plea of privilege, which was done, and judgment entered transferring

the case to the district court of Travis county, Tex., where the defendant resided.

By proper proceedings the action of the court in sustaining the plea of privilege and transferring the case to Travis county is before us for review.

[1] Appellant sufficiently pleaded fraud in alleging that the appellee promised and represented to him in Lubbock county, Tex., that she would erect a four-room residence and other improvements on the land to enable him to live upon, and cultivate, the farm for the year 1925; that said promises and representations were material, induced him to rent the premises and execute the notes therefor; that said promises and representations were false, and made with no intention of being kept and performed. Cearley et al. v. May, 106 Tex. 442, 167 S. W. 725; Haddaway v. Smith (Tex. Civ. App.) 256 S. W. 965; Mack Mfg. Co. et al. v. Oeding (Tex. Civ. App.) 244 S. W. 156; Haddaway v. Burford (Tex. Civ. App.) 239 S. W. 627.

The rental contract, where made, the consideration, the terms and conditions thereof, and the failure of appellee to keep and perform the promises and representations, find sufficient support in the testimony heard on the plea of privilege.

A leasehold in the land for the period of a year was vested in appellant at the inception of his lease (35 C. J. 952); hence the transaction was, with regard to real estate and the false promises and representations to do something in the future, actionable fraud (article 4004, R. C. S. 1925).

[2] The only other question involved is whether or not a suit because of fraud can be maintained against a defendant who is not a public officer out of the county of his residence, and in the county where the fraud is committed.

Article 1830 of V. S. C. S. reads:

"No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile, except in the following cases, to wit."

Subdivision 7 of said article is:

"In all cases of fraud, and in cases of defalcation of public officers. in which cases suit may be instituted in the county in which the fraud is committed, or where the defalcation occurred, or where the defendant has his domicile."

This language is clear, and has been uniformly construed by the courts to authorize a suit based on fraud to be instituted and maintained against the party committing the fraud in the county where the fraud was perpetrated, notwithstanding such party was a resident of another county.

The same subdivision (No. 7) of article 1995 of R. C. S. 1925 reads:

"In all cases of fraud and defalcation of public officers, suit may be brought in the county in which the fraud was committed or defalcation occurred, or where the defendant has his domicile."

Appellee insists that, on account of the changes made in the wording of this subdivision, fraud, unless committed by a public officer, is no longer an exception to the general rule that the defendant must be sued in the county of his residence.

If the language of this subdivision, as revised, applies to public officers only, it covers official acts only, and, in order to place the venue of a suit based on fraud because thereof, out of the county of the residence of the party committing the fraud, such fraud must arise out of some official act committed by an officer out of the county of his residence, and the fraud of a private citizen on which a cause of action is grounded will not permit a suit because of the fraud to be maintained out of the county of the residence of such citizen, and the old subdivision of the statute is repealed.

Was it the purpose of the revision to amend the original subdivision as theretofore written and construed, or was it the intention to repeal it, and, if not, does the change in the language necessarily have the effect of amending or repealing said subdivision as originally written?

Acts of 1923, Thirty-Eighth Legislature, p. 338, which authorized the Governor to appoint a commission to make a complete revision and digest of the general laws of the state, provides:

"Sec. 2. It shall be the duty of the commission to revise all the general statutes of the state in force up to the time they shall make their report. They shall execute the revision in all respects in such manner, as, in their opinion, will render the statutes most concise, plain and intelligible. In making this revision, the commission may make such changes in arrangement, working and phraseology, either by omission or addition, as may be essential to express the meaning of the law in simple, plain, and concise terms; they shall omit all obsolete statutes and all statutes which have been declared void or unconstitutional by either the Supreme Court of Texas or of the United States. They shall omit from all statutes useless, contradictory, and confusing language, and express the purpose of the law in simple language; they shall harmonize conflicting statutes, or parts thereof, by rewriting, omissions, or additions, and shall generally make such changes, additions, or omissions as they may deem necessary to reduce in volume the general statutes of the state and make them harmonious, plain, concise and complete.

"It is the purpose of this act to clothe the commission with broad authority to revise and digest the general statutes of the state, and this act shall be interpreted in a manner consistent with its general purpose and the purpose of the broad language of the Constitution authorizing the revision and digest of the laws."

[3] This act empowers the commission, and imposes upon it the duty, to make such changes in arrangement, wording, and phra-

(286 S.W.)

seology, either by omission or addition, as may be essential to express the meaning of the law, in simple, plain and concise terms; to harmonize conflicting statutes by rewriting and making such omissions or additions as may be deemed necessary to make the statutes of the state harmonious, plain, concise, and complete. No authority is given to enact, amend, or repeal any existing law. We must presume, therefore, that the powers conferred were exercised, and the duties performed, in compliance with the provisions of this law, and that there was no intention upon the part of the commission to enact, amend, or repeal any article of the statutes embodied in the laws of the state.

The Thirty-Ninth Legislature adopted the revision of the laws by the commission as the revised civil statutes of the state, and provided that all civil statutes not included therein and continued in force were repealed. The statute and the subdivision thereof under consideration are included and continued in force. Does the subdivision of this article of the venue statute, as revised, authorize a suit to be instituted and maintained because of fraud out of the county of defendant's residence, if such defendant is not a public officer? In the acts of the Thirty-Ninth Legislature, p. 282 (Vernon's Ann. Civ. St. 1925 [final title] §§ 23a to 23m), providing for the publication of the laws as recompiled by the commission, after making provisions relative to any article expressly repealed or amended and re-enacted by said Legislature, it is stipulated that any article that had been modified by the Legislature, but not amended and re-enacted, should be retained, and the act modifying the same inserted immediately after such article. An examination of the acts of said Legislature discloses that this subdivision of the venue statute was neither repealed, amended, nor modified by any act of the Thirty-Ninth Legislature, unless done by the adoption of the 1925 Civil Statutes as revised by the commission.

The first Legislature of the state, in the year 1846, provided:

"That no person who is an inhabitant of this state shall be sued out of the county where he has his domicile, except in the following cases, viz."

After setting out five exceptions, subdivision 6 reads:

"In cases of fraud, and also in case of defalcation, of public officers, in which cases suit may be instituted in the county where the fraud was committed, or where the defalcation occurred, or where the defendant has his domicile." 2 Gammel's Laws of Texas, p. 1669.

[4] This statute, as enacted by the first Legislature, bestowed upon the citizens of this state, upon whom a fraud has been practiced, a valuable privilege which they have been permitted to exercise since it be-

came effective. The legislative policy of the state is persuasive in the matter of a doubtful statutory construction (City of Austin v. Cahill, 99 Tex. 172, 88 S. W. 542, 89 S. W. 552), and the early enactment of this statutory provision and its continuance in force for more than three quarters of a century reveals our legislative policy on this subject. Certainly it was not the purpose or intention of the Legislature to take from the citizens of the state the privilege so long granted to them by law without in some way manifesting such intention. We find nothing in the history of this legislation, or the acts of the Legislature, which reveals a purpose or intention to change the law or the policy of the state.

[5] The fundamental rule in the construction of a statute is to give effect to the intention of the Legislature. Imperial Irrigation Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322; First National Bank of Giddings v. Lee County Cotton Oil Co. et al. (Tex. Com. App.) 274 S. W. 127.

Article 10, § 6, R. C. S. 1925, says:

"In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

The subdivision of the venue statute under consideration, interpreted in the light of the foregoing decisions and the statute of this state, we think, make it manifest that it was not the intention of the Legislature to limit or restrict the meaning of said subdivision to the fraud or defalcation of public officers.

We do not think the wording of the revised subdivision of the venue statute is so plain and unambiguous as to make certain the intention of the Legislature to change the meaning of the subdivision as originally written, leaving no room for construction. It clearly expresses two grounds which, if invoked, may control venue: Fraud in the county in which the fraud is committed, and defalcation in the county where the defalcation occurred. The word "defalcation" applies particularly to the acts of a public officer, and the phrase "of public officers" does not necessarily limit fraud to official acts.

"That the mere change of phraseology, in the revision of a statute before in force, will not work a change in the law previously declared, unless it indisputably appear that such was the intention of the Legislature, has been expressly decided." Ennis et al. v. Crump, 6 Tex. 34.

"The revised statutes substantially re-enact the former laws upon this subject. If it had been the will of the Legislature to abrogate the rule established in the case cited, it is to be presumed that in revising the laws they would have clearly expressed that intention in some special provision upon the subject." G. C. & S. F. Ry. Co. v. F. W. & N. O. Ry. Co., 68 Tex. 107, 3 S. W. 565.

See, also, Moorman v. Terrell, 109 Tex. 173, 202 S. W. 727; Scott v. State, 6 Tex. Civ. App. 343, 25 S. W. 337; Hartford Fire Ins. Co. v. Walker, 94 Tex. 478, 61 S. W. 711; St. Louis S. W. Ry. Co., of Texas, v. Hill & Morris, 97 Tex. 506, 80 S. W. 368.

"'It is a well-settled rule,' says the court in Ohio [Conger v. Barker's Adm'r, 11 Ohio St. 1], 'that in the revision of statutes neither an alteration in phraseology nor the omission or addition of words, in the latter statute, shall be held, necessarily, to alter the construction of the former act. And the court is only warranted in holding the construction of a statute, when revised, to be changed, where the intent of the Legislature to make such change is clear, or the language used in the new act plainly requires such change of construction.' It should be remembered that condensation is a necessity in the work of compilation or codification. Very frequently words which do not materially affect the sense will be omitted from the statutes as incorporated in the Code, or the same general idea will be expressed in briefer phrases. No design of altering the law itself could rightly be predicated upon such modifications of the language. And again in the construction of such a body of laws, 'the manifest purpose to express in general words the substance of former statutes must be borne in mind; and from the omission of special words, found in former statutes, embraced by the general words, an intention to change the former statutes will not be implied.'" Black on Interpretation of Laws (2d Ed.) p. 594.

The judgment is reversed, and the cause remanded.