RICHARD MORGAN, EX'R, ET AL. V. MARTHA H. DAVENPORT ET AL.

(Case No. 1264.)

1. CONSTRUCTION OF STATUTES.— Though, as a general rule, when a statute of England or of one of the older states is re-enacted in Texas, after it has received a settled and uniform construction by the courts of the government from which it was borrowed, it will receive the same construction by the courts of Texas, yet if there be something incorporated in the statute, showing a legislative purpose not to adopt the former construction, then the construction given by the courts of the government from which it was borrowed cannot prevail.

2. SAME.— If that part of the borrowed act which caused it to be aided by judicial construction in the government from which it was borrowed, so as to give it a meaning adverse to the common import of the language used, be provided for by the Texas law of which the borrowed statute becomes a part, then the presumption is that the legislature intended to adopt only so much of the former construction as may be provided for and practically incorporated in the new statute.

3. REVOCATION OF WILL.— The English and American cases, construing the statute of 29 Car. II., c. 3, and the American statutes borrowed from it, and which hold that a will is revoked by the subsequent marriage and the birth of a child, hold that marriage alone will not effect such a result, but that the birth of a child is also necessary. Both were required to operate a revocation of the will.

4. CONSTRUCTION OF STATUTE — WILLS.— The statute of January 28, 1840 (Pasch. Dig., 5363, 5364), furnishes evidence by its terms that the sole ground upon which the wish of a testator, as expressed in a valid written will, may be disregarded, is the existence of a child or children born after the will was made, who are unprovided for by the will or otherwise, and negatives the idea that the marriage of the testator, after the will was made, can be looked to at all in determining the rights of after-born children, unless upon the question of legitimacy.

5. SAME.— A will cannot be so revoked, under the clauses of the statute above referred to, by the birth of children after the will is made, as to let in even a mother to take a part of the estate under the statutes of descent and distribution.

6. SAME.— The fact that the statute (Pasch. Dig., 5363) provides for the revocation of a will on account of the birth of an after-born child, or of children, in one case, and under given conditions, negatives an intention to revoke in other cases and under other conditions.

7. REVOCATION OF WILLS.— No valid written will can be revoked in Texas, except in one of the modes pointed out by the statute.

8. PRACTICE IN DISTRICT COURT.— When a written agreement is made and filed as to the facts, for the purpose of facilitating a trial, it cannot be set aside and disregarded on a mere motion setting up a mistake in its execution, and sustained by *ex parte* affidavits.

APPEAL from Dallas. Tried below before the Hon. Geo. N. Aldredge.

In addition to the facts set forth in the opinion, it may be stated

that while the cause was pending in the district court the minor plaintiff, Helen D. Davenport, died, and the cause proceeding in the name of the sole surviving plaintiff, Martha H. Davenport, judgment was rendered in the district court on the 15th of October, 1881, "That the will of Silas D. Davenport, described in plaintiffs' petition, be set aside and for naught held, and that the plaintiff Martha H. Davenport, as the widow of said Silas D. Davenport, receive such share of his estate as she is entitled to under the laws of descent and distribution of this state, or such share as she would be entitled to in the case of his intestacy."

From this judgment defendants appealed.

The first assignment was as follows:

"The court erred in permitting said cause to be tried and judgment rendered without first making the legal representatives of the plaintiff Helen D. Davenport parties to this suit, her death having occurred while this suit was pending in the said district court, and having been suggested to the court."

The cause coming on to be heard, the defendants suggest the death of the plaintiff Helen D. Davenport, and move that *scire facias* issue to her legal representatives; but the court overruled the motion and ordered the cause to proceed, "as it appears to the court from the record, that all parties in interest are before the court, to which ruling defendants except."

For the purpose of facilitating a trial, the parties, acting by their attorneys, made a written agreement as to the facts of the case. In this agreement it was admitted that certain property described in plaintiffs' petition was the separate property of Silas D. Davenport.

One of the defendants' attorneys, Richard Morgan, who was also a defendant and guardian of his co-defendant, and who, for the defendants, signed the agreement, seems to have believed, subsequent to making the written agreement, that none of the property mentioned in plaintiffs' petition was the property of the testator, but was in reality the property of the defendant Mary L. Davenport, although the legal title of the same was in the testator.

As soon as the supposed mistake was discovered he made application to the court to have the agreement set aside. But the court held that it was not proper practice to set aside an agreement, but that rebutting testimony might be admitted on the trial to qualify it.

*Morgan & Gibbs*, for appellants.

*H. Barksdale*, for appellee.

STAYTON, ASSOCIATE JUSTICE.— On the 4th day of September, 1875, Silas D. Davenport made a will, which was as follows:

"THE STATE OF TEXAS — *County of Dallas.*

"Be it hereby known that I, Silas D. Davenport, being in health and of sound mind, and being about to leave home, do by this writing will and bequeath to my little daughter, Mary L. Davenport, one piece of ground in the rear of the P. E. church; one life insurance policy, $2,000, and two shares, $500 each, of stock in the First National Bank of this city. Papers are deposited in said bank and with Mr. W. L. Murphy, and I do hereby ask Richard Morgan and W. L. Murphy conjointly to act as her guardians, holding all property for her, from the proceeds of which I wish her to receive a religious and useful education in some school of the church. Whatsoever else may be found among my effects of value as keepsakes, I wish her taught to retain them until such time as she is old enough to appreciate their value. Writing this in haste, I intend it to hold the same as if in due legal form.

"This the 4th day of September, 1875, City of Dallas.

"S. D. DAVENPORT."

At the time the will was made the maker was a widower, and Mary L. Davenport was then his only child. Silas Davenport afterwards married the plaintiff Martha H., and by that marriage was born the other plaintiff, Helen D. Davenport. She, however, was not born until after the death of her father.

It seems that the property named in the will was all that Davenport owned at the time he made the will, but he subsequently, and prior to his marriage, acquired other real estate, which became the homestead of the family.

Davenport died on the 1st day of January, 1877, and his will was admitted to probate, and in 1878 a proceeding was instituted in the county court by Martha H. and Helen D. Davenport for the purpose of setting aside the decree probating the will, and to have it declared null.

Judgment was rendered in the county court in favor of the applicants, and an appeal was prosecuted to the district court, in which a trial was had and a judgment rendered setting aside the probate of the will and directing the distribution of the estate of the testator as though he had died intestate, and from that judgment an appeal is prosecuted to this court.

It is claimed that the marriage of Silas D. Davenport and birth of a child subsequently to the making of the will operated an im-

plied revocation of the will, and upon this question depends the proper determination of the case.

It is not denied that the marriage of a person making a will and the birth of a child subsequent to the making of a will, by which the testator disposed of his whole estate, and in which no provision was made for after-born children, unless they were provided for by settlement, would at common law operate as a revocation of the will; and the question is, does such marriage and birth of a child have the same effect under the statutes in force in this state at the time of the death of the testator?

It then becomes necessary to determine whether or not the statutes of this state, at the time of the death of the testator, provided the sole means or causes by which a written will can in this state be revoked, or whether, notwithstanding the express terms of the statute, a will may be revoked by implication for causes deemed sufficient at common law, but not provided for by the statutes of this state.

In considering this question, no inquiry will be made as to whether or not the will in question, within the meaning of the rule, disposed of all of the testator's estate, nor as to the necessity for it so to do to work a revocation at common law.

The statutes of this state bearing upon the question are as follows: "No devise so made or any clause thereof shall be revocable but by the testator or testatrix destroying, canceling or obliterating the same, or causing it to be done in his or her presence, or by a subsequent will, codicil or declaration in writing made as aforesaid; but every last will and testament, made when the testator had no child living, whether any child he might have is not provided for or mentioned, if at the time of his death he leave a child, or leave his wife *enceinte* of a child which shall be born, shall have no effect during the life of such after-born child, and shall be void unless the child die without having been married, and before he or she shall have attained the age of twenty-one years. When a testator shall have children born and his wife *enceinte*, the posthumous child or children, if unprovided for by settlement, and pretermitted by his last will and testament, shall succeed to the same portion of the father's estate as such child would have been entitled to if the father had died intestate, towards which portion the devisees and legatees shall contribute proportionably out of the part devised and bequeathed to them by the same will and testament." Pasch. Dig., 5363.

"If a testator, having a child or children born at the time of making and publishing his last will and testament, shall, at his

death, have a child or children born after the making his last will
and testament, the child or children so after born, if such child or
children be unprovided for by settlement, and be pretermitted by
the last will and testament, shall succeed to the same portion of the
father's estate as such child or children would have been entitled to
if the father had died intestate; towards raising which portion the
devisees and legatees shall contribute proportionably out of the
parts devised and bequeathed to them by the same will and testament,
in the same manner as is provided in the case of posthumous chil-
dren." Pasch. Dig., 5364.

The first part of these statutes in terms excludes the idea that a
will may be revoked in any other manner than therein provided.
Its language is clear and explicit, and contains terms prohibiting the
revocation of a will unless the same be done in the manner prescribed.

But it is contended that, as it is but the substance, if not the lan-
guage, of the statute of 29 Car. II., c. 3, it should, therefore, receive
the same construction as the statute referred to has received in En-
gland, and in some of the states of the Union. It was said in the
case of Munson v. Hallowell, 26 Tex., 481, that " when a statute
which has been borrowed by us from England or some of the older
American states has, previously to our enactment of it, received a
settled and uniform construction by the courts of the country from
which we have taken it, our courts will give to it a similar construc-
tion. Such interpretation is to be as much regarded in determining
its intent and meaning as if it were expressly so declared in the
statute itself."

Such seems to be the true rule in regard to the statutes of frauds,
and other like general English and American statutes which have
been adopted here. Pennock & Sellers v. Dialogue, 2 Pet., 18.

In construing a statute, however, it becomes necessary to consider
every part of it in order to arrive at the intention of the legislature,
and every part of the statute must be given effect if it can be done.

If it appears that we have, as part of a statute, adopted an En-
glish statute, but there be that in the statute, not in the statute
incorporated as a part of our own, which shows that it was not the
intention of the legislature to adopt the borrowed statute with the
construction put upon it by the courts of the country from which it
is borrowed, then such construction cannot be received or regarded
as a part of the statute.

The question is one of legislative intention, and if it appears that
in the enactment of the statute in question the mind of the legisla-
ture was called to the matter, in reference to which construction of

the borrowed statute had been resorted to, by the courts of the country from which such statute was taken, in order to avoid an apparent hardship, which would result if the statute was construed in accordance with the ordinary import of the language, and that in reference to such matter the defect in the former statute was substantially provided for in the statute enacted, then it is to be presumed that the words of the statute are to be construed in their ordinary sense, and not with reference to any former construction, and that no deviation from a given clause is admissible further than the same may be authorized by other parts of the statute which provide for the very matter which, under the borrowed statute, was protected by construction. And if a part of the matters which caused the former statute to be aided by construction adverse to the common import of the language used therein, be provided for in a statute of which such former statute becomes a part, then the presumption is that the legislature intended to adopt with the former statute only so much of the construction thereof as is provided for and practically incorporated in the new statute.

In the English and American cases relied on to show that the will was revoked by the subsequent marriage and birth of a child, it is held that marriage alone could not have that effect, but that the birth of a child was also necessary.

Whether the construction was based upon the evidential weight of these two facts, tending to show the real or probable intention of the testator adverse to his declaration in writing, or whether, as matter of law, without reference to the presumed intention of the testator, these two facts were held to operate a revocation of a will, in connection with the other necessary facts, is unimportant in the construction of our statute; for if we find the relief given by construction under the English statute practically given to one of the classes, by reason of the existence of one of those facts, then we are to presume that it was not intended that the wanting fact, i. e., marriage after making the will, was intended to have any weight, or its existence to confer upon any one the right to have the plain import of the language extended to a case not provided for in the statute.

The second clause of the statute under consideration provides for a case where, at the time of making a will, the testator had no child living, and makes no provision for one or more, and one is subsequently born and alive at the time of his death, or if he leave his wife *enceinte* of a child which shall be born, and declares that in such case the will shall have no effect during the life of such after-

born child, and shall be void, unless the child die without having been married, and before he or she shall have attained the age of twenty-one years. Even in this case, which is the only one in which a will is invalidated by the subsequent birth of a child or children, if the child die before arriving at majority, or without marrying at an earlier age, the implication is that the will shall stand.

The next clause of the article provides for a posthumous child in cases where the testator had children at the time of his death, who were born after he made his will.

Art. 3364, Pasch. Dig., provides for the case in which a testator has children living at the time a will is made, unto whom a child or children are subsequently born, and this article, as does the preceding one, provides that the child or children who are therein pointed out shall have the same share of the testator's estate as though he had died intestate, and points out the mode in which this shall be accomplished.

The statute furnishes evidence that the sole ground upon which the wish of a testator, as expressed in a valid written will, may be disregarded, is the existence of a child or children born after the will was made, who are unprovided for by the will or otherwise, and negatives the idea that the marriage of the testator after the will is made is a fact to be looked to at all in determining the rights of after-born children, unless upon the question of legitimacy.

The statute provides, perhaps, for every contingency in which after-born children would need protection, and the only clauses applicable to the present case evidence that the will is not to be revoked in any of the cases provided for by the birth of children after the will is made, so as to let in even a mother to take a part of the estate under the statutes of descent and distribution.

The second clause of art. 5363, Pasch. Dig., does provide for the revocation of a will on account of after-born children, but then only in the event that such children die before majority or marriage. The clause is not applicable to this cause, but the fact that the statute provides for the revocation of a will on account of an after-born child or of children in one case, and under given conditions, negatives the intention to revoke, in other cases, and under other conditions.

A statute which accomplishes effectually, as the one under consideration does, by engrafting upon every will the statute itself, the purpose of protecting, without revocation, the interest of after-born children, evidences that it was not the intention of the legislature,

in providing how wills might be revoked, or for what causes, to permit them to be revoked by implication in order to protect such persons, and thus let in the claims of all persons to a part of the estate who, but for the will, would be entitled to take under the statutes regulating the descent and distribution of the estates of intestates.

In some cases, as where there are only two children to take, or where none but children exist, to take under the statutes of descent and distribution, it would make but little practical difference whether the will was revoked or the property disposed of as the statute provides in the case of after-born children; but, as in this case, where the mother would inherit a part of the estate if the will be revoked, and this in her own right, it would become important that the statute be enforced. Otherwise a devisee or legatee would receive less of the estate than under the statute such person would be entitled to. We therefore hold that under the statutes of this state there can be no such thing as the revocation of a valid written will, unless the same be revoked in one of the manners prescribed by the statute.

We are of the opinion that after the death of Helen D. Davenport, who died pending the suit, all the necessary parties were before the court to enable it properly to adjudicate the questions involved.

The court did not err in refusing to exclude the written agreement of facts upon which the parties had agreed the cause should be tried. If an issue of fact had been tried as to whether that agreement truly stated the facts, and as to whether it was made in mutual mistake, and the court had found that it was not true, and that it was made in mutual mistake or through the fraud of either party, which is not claimed, then the agreement should have been set aside. No issue was tried upon these questions, and the court did not err in refusing to set the agreement aside, upon motion sustained only by *ex parte* affidavits. The court, however, permitted the appellant, if he could, to show that the facts stated in the agreement were not true, and he seems not to have attempted to avail himself of that right.

There is no question raised as to the right of the wife as survivor to occupy the homestead, which was acquired after the will was made, during her life, or so long as she may elect to do so, nor as to the mode and manner of distributing the estate under the will and the facts in proof; hence no expression of opinion in reference to these matters is called for.

For the reasons indicated, the judgment of the court below will

be reversed, and judgment here rendered that the plaintiff take nothing by this action, and that the appellants recover costs in the courts below and in this court.

REVERSED AND RENDERED.

[Opinion delivered October 26, 1883.]