Opinion by
White, . P. J.
§ 489. Damages by overflow of land caused by railroad' embankment; ivhat recoverable; effect upon, where com-pany has right of way; case stated. By regular proceeding had for that purpose in the county court of Kaufmam county, a right of way in behalf of the railroad was comdemned through two hundred acres of land belonging to-> Clifton. It was adjudged that he was entitled to no. •damages. In constructing its road-bed, the company threw up an embankment through his cultivated farm — his homestead tract. The road was so constructed as to-, fill up certain creeks and branches, causing the water to. flow upon said land, inundating about forty acres thereof,'. *434 and rendering it valueless, and also injuring and destroying crops thereon, etc. Appellees claimed damages in the sum of $1,000 and recovered judgment for the sum of $800 and costs. The court charged the jury that the measure of damages would be the difference between the value of the entire tract of land, before and after the construction of the road, and also submitted to the jury the value of the crops destroyed, etc., and of future damage. Our statute provides that, “where only a portion of a person’s real estate is condemned (for a railroad right of way), the commissioners shall estimate the injuries sustained and the benefits received thereby, by the owner, as to the remaining portion of such real estate, whether such remaining portion is increased or diminished in value by such condemnation, and the extent of such increase or diminution, and shall assess the damages accordingly.” [B. S. art. 4195.] This condemnation is, however, always, and must necessarily be, based upon the idea and presumption that the railroad will be constructed with skill, and in a manner not to occasion damages which could be avoided by the use of ordinary care in its construction. A condemnation does not give the company a right ipso facto to use its right of way without reference to the rights of others. The maxim, “ sic utere tuo, ut alienum non Iccdas ” (so use your own as not to injure another’s property), applies as well to a railroad in the use of its right of way, as to an individual in the enjoyment of his private property. “ The construction of public improvements in a manner to cause unnecessary damages leaves to the owner his common law action, in which the entire damages, past, present and prospective, should be settled, and for such damages he connot apply to the commissioners assessing damages to consider his claim. These public works must be maintained in a skilful and perfect manner, and damage resulting from negligence (in construction) or maintenance are not included in the original compensation. An action will lie from a defective bridge or culvert, which caused water to accumulate and flow *435 back on lands above.” [Mills on Em. Dom. § 220.] “If, by -reason of the construction of a railroad bed and ditches, surface water be diverted from its usual and ordinary course, and by means of embankments and ditches is conveyed to any particular place, and thereby overflows land which before the construction of the road did not overflow, the company will be liable to the ownler of the land for such injury. This rule applies as well where the company has the right of way over the land, as where it is a trespasser or possessor without right.” [R. R. Co. v. Donahoo, 59 Tex. 128; ante, § 140.] The damage done to property by the construction of a railroad as much entitles one to a recovery as if the property had been destroyed. [R. R. Co. v. Eddins, 60 Tex. 656.] In this case, the allegation in substance was, that, by the negligent construction of its road-bed, embankments were thrown up across creeks and branches, whereby the water of ordinary rains was diverted from said creeks and branches upon plaintiff’s farm, inundating forty acres of his finest and best tillable land, until it was a total loss. That a ditch which plaintiff had constructed was also destroyed by the embankment and road-bed. He claimed that the value of said forty acres was a total loss to him, and that the value of his entire two hundred acres had been impaired. Under these allegations, plaintiff was entitled to prove the injury to the entire tract, and the measure of his damage would be the difference between the value of the land immediately before, and immediately after, the injury. [W. & W. Con. Rep. § 445.] In ■ effect this was what the court permitted to be proved, and what it charged the jury upon this subject.
§ 490. Erroneous charge not ground for reversal, when. Other objections are made to the chai’ge, as, for instance, that it instructed the jury with regard to injuries done to the land by the tramping of stock, when no such injuries were proved; and that it submitted to the jury the question of future damage of a permanent character, when there was no proof thereof. The evidence was *436 that the forty acres were rendered entirely valueless by the overflow, and it was worth $25 per acre before injured. This damage alone, without considering any other, amounted to $1,000. The verdict and judgment being for only $800, we cannot see how the charge complained of, if erroneous, could have prejudiced or injured the defendant. And the same may be said of the other objection to that portion of the charge which permitted the jury to take “into consideration the use which is made of said land,” as that it was used as a homestead. “ Though the charge of the court may,, in some respects, be incorrect, or present some issues not raised by the pleadings, yet if it appears affirmatively from the record that the finding of the jury was not influenced by such erroneous charge, the case will not ordinarily be reversed.” [R. R. Co. v. Hardy, 60 Tex. 230.] “An erroneous charge will not be cause for a reversal of the judgment when it is manifest that no injury could have resulted therefrom to the party complaining of it.” [Ante, § 187.]
December 3, 1884.
Affirmed.