COLLIER et al. v. SMITH.   (Nos. 671, 676.)

(Court of Civil Appeals of Texas. Amarillo. June 13, 1914. On Motion for Rehearing, Oct. 10, 1914.)

1. APPEAL AND ERROR (§ 395*)—PERFECTION—BONDS.

Where appellants, special agents for the commissioner of insurance and banking, were enjoined from realizing upon the liability of stockholders of an insolvent state bank, the fact that appellants, who were personally enjoined, filed a personal bond, although, as agents of the commissioner, they could appeal under Rev. St. 1911, art. 2105, without bond, is no ground for dismissal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2058, 2064–2070, 2085, 2086, 3127; Dec. Dig. § 395.*]

2. INJUNCTION (§ 145*)—PROCEEDINGS—AFFIDAVITS—SUFFICIENCY.

Under Rev. St. 1911, art. 4649, providing that no injunction shall be granted unless the applicant shall present his petition verified by his affidavit, an affidavit attached to a petition for an injunction reciting that the affiant on oath stated he believed the facts alleged in the petition to be true, is not sufficient, where the grounds of belief were not stated, and the facts alleged were not sworn to in such an unequivocal manner that an indictment for perjury would lie.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 318, 321; Dec. Dig. § 145.*]

3. INJUNCTION (§ 145*) — PROCEEDINGS — —AMENDMENT.

The affidavit attached to a petition for an injunction may be amended so as to cure defects.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 318, 321; Dec. Dig. § 145.*]

4. APPEAL AND ERROR (§ 100*)—DECISIONS REVIEWABLE—CONSTRUCTION OF ORDERS.

Where the first order granting plaintiff a temporary writ restrained defendants from suing plaintiff or other stockholders of an insolvent bank to recover upon their stockholders' liability, an order entered upon motion to dissolve the temporary injunction which restrained defendants from levying and collecting upon the individual liability of stockholders until it should appear to the court that such procedure was reasonably necessary to discharge the liabilities of the bank is a distinct order, and may be appealed from, even though no appeal will lie from an order denying a motion to dissolve a temporary injunction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 670–680; Dec. Dig. § 100.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. BANKS AND BANKING (§ 49*)—POWER OF BANKING COMMISSIONER—STATUTE.

In view of the National Banking Act (Act June 3, 1864, c. 106, § 50, 13 Stat. 114 [U. S. Comp. St. 1901, p. 3507]), Acts 31st Leg. 2d Ex. Sess. c. 15, § 9 (Rev. St. 1911, art. 459), authorizing the commissioner of banking, if necessary to pay off the debts of an insolvent state bank, to enforce the liability of stockholders, confers upon the commissioner the power to enforce the individual liability of stockholders, and the courts cannot compel him to first show in a judicial proceeding that such recovery is necessary to discharge the bank's liabilities.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 71–81½, 513, 534, 535; Dec. Dig. § 49.*]

6. STATUTES (§ 226*)—CONSTRUCTION—ADOPTION OF FOREIGN STATUTE.

Where a foreign statute which has already been construed by the courts of that country is adopted, the construction is also adopted.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. § 226.*]

On Motion for Rehearing.

7. STATUTES (§ 226*)—CONSTRUCTION—PRIOR CONSTRUCTION.

Where a foreign statute which has already been construed is adopted, the courts of the forum should, only where the most cogent reason exists, depart from that construction.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. § 226.*]

Appeal from District Court, Potter County; Jas. N. Browning, Judge.

Suits by E. L. Smith against W. W. Collier and another. From orders denying motions to vacate temporary injunctions, defendants appeal. Orders vacated and set aside.

Madden, Trulove & Kimbrough, of Amarillo, for appellants. Gustavus & Jackson and W. E. Gee, all of Amarillo, and H. H. Cooper, of Houston, for appellee.

PER CURIAM. The motion to consolidate cause No. 676 with 671 is granted, and the records in both proceedings will be considered together and carry the numbers in this court of 671, 676.

The record in No. 676, which comprehends the entire record in 671, with additional proceedings thereafter in the same cause in the district court, discloses that E. L. Smith, a stockholder in the First State Bank of Amarillo, Potter county, Tex., petitioned the district court of said county for a writ of injunction for the purpose of restraining W. W. Collier, the bank commissioner of the state of Texas, and his special agent, J. O. Roots, who are in the possession and control of the assets and property of said bank, from disposing of the property of said bank, and from bringing suits against petitioner and other stockholders of said institution, and from paying, or permitting to be paid, any deposits out of the state guaranty funds, without first ascertaining that the same were deposited subject to the payment thereof; and specially petitioning a restraint of the payment by the bank commissioner of the

sum of $6,500 to the First National Bank of Amarillo, Tex.

Upon the presentation of the application for injunction, the district judge, in chambers, on the 24th day of April, 1914, ordered the issuance of a writ of injunction "in all things as prayed for," conditioned upon the execution of a $2,000 injunction bond, and thereafter on May 5, 1914, upon motion to dissolve the temporary injunction, after answer filed, the district judge, upon "pleadings of the parties only" entered an order "that the temporary injunction * * * is hereby dissolved as to all matters in plaintiff's original petition, save and except that said injunction be continued in force as against said defendants, and that they be restrained from levying, assessing, or collecting any assessment on the stock of the individual stockholders of the First State Bank until such time as it may be made to appear to the court that the levying and collecting of such assessment of the individual liability of said stockholders upon their stock shall be reasonably necessary to discharge the liabilities of the First State Bank, and that said temporary injunction, so modified, be continued in force until the further order of this court. * * *" The appellee urges in both causes that this court is without jurisdiction, for the reason that the proceedings were instituted against appellants, W. W. Collier and J. O. Roots, in their official capacity as commissioner of insurance and banking of the state of Texas and as special agent, respectively, and not as individuals, and that the attempted appeal as individuals is in reality no appeal.

[1] The appellants have executed an appeal bond as individuals. All that is necessary to perfect an appeal from a temporary injunction is to file the transcript within the proper time in the Court of Civil Appeals. The contention of appellee appears to be based on the fact that the appeal bond is signed by appellants as individuals, and not in their official capacity. If appellants were acting in their official capacity, under the direction of the commissioner of insurance and banking, then they were not required to give bond. R. S. art. 2105; Lane v. Hewgley, 155 S. W. 349, 350. If Roots was special agent for the commissioner, he was, in that capacity, a part of the department, and he was also an officer of the state of Texas, the same as a receiver of a national bank is an officer of the United States, appointed by the comptroller. The petition charges the appellants with acts which are alleged to have been unlawful and unauthorized by law, and sought to restrain their further doing such acts. The temporary order of injunction restrains appellants personally. As state commissioner of insurance and banking, in order to appeal, he was not required to execute a bond. The appellants were enjoined personally

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

from doing alleged unlawful acts. We see no reason why they may not also join in the appeal as individuals. In doing so it certainly would not dismiss the appeal. This ground of the motion is overruled.

[2] The affidavit attached to plaintiff's petition, which petition is in both records, is as follows:

"Before me, the undersigned authority, on this day personally appeared E. L. Smith, who, being by me duly sworn, deposes and states on oath that he believes the facts therein contained to be true."

Under Revised Civil Statutes 1911, art. 4649, we think this affidavit is insufficient. This article provided that no injunction shall be granted unless the applicant shall present his petition to the judge, verified by his affidavit. The test of an affidavit, as laid down by the Commission of Appeals, is that the affidavit of the facts sworn to be so direct and unequivocal as that an indictment for perjury would lie if the oath is falsely made. Whitemore & Co. v. Wilson, 1 Posey, Unrep. Cas. 213. In 1 Ruling Case Law, p. 770, § 15, it is said:

"An affidavit should always be made by one having actual knowledge of the facts, if possible, and its allegations should be full, certain, and exact; * * * a bare statement of one's belief being absolutely immaterial unless the case is one where an affidavit as to belief only is required."

Page 772, § 18:

"Affidavits upon information and belief should allege facts definitely and also set forth the sources of the affiant's information and the grounds of his belief, to enable the judicial mind to determine whether the belief is well or illy founded. Inasmuch as affidavit upon information and belief cannot supply the place of positive allegation, affidavits of this nature cannot ordinarily be used except when authorized by statute."

In our opinion, the affidavit is wholly insufficient. Smith v. Banks, 152 S. W. 449; Ross v. Veltmann, 161 S. W. 1073.

[3] Since the affidavit is a defect which may be amended, we will not rest the decision of the case upon this assignment.

[4] An analysis of the first order providing for the issuance of the temporary writ exhibits that the defendants, the commissioner of banking and his special agent, were not restrained from levying or assessing the stock of the individual stockholders of the bank, and the proceedings upon the hearing of the motion to dissolve is in reality a first dispensation of that character of relief. The first order for the temporary writ, as stated, restrained the defendants "from suing or bringing suits against this plaintiff and the other stockholders," of the bank. The subsequent order at the hearing upon the motion to dissolve not only restrained the defendants from levying any assessments on the stock of the individual stockholders of said bank, but also restrained them from collecting any assessments which had been previously levied as a condition to collecting the same. The first order did not enjoin the defendants from levying the assessments and collecting the same, by personal solicitation or otherwise by said defendants, outside of court. The first order did restrain the defendants "from suing or bringing suits against this plaintiff and the other stockholders of said institution." But the second order restrained them from "levying and collecting * * * such assessment of the individual liability of said stockholders upon their stock "until such time as it may be made to appear to the court that it shall be reasonably necessary to discharge the liabilities of said bank. The operative effect of the last order is to prevent the levy of assessments upon the stock and of collecting any such assessments, except by presentation of appropriate reasons, based upon the necessity of a discharge of the liabilities of said bank, addressed to the judicial determination of the court; in other words, it means that if, in this proceeding, the commissioner of banking files a petition or other appropriate pleading, making an exhibition of a certain predicate, with reference to the assets and liabilities of the bank, as a prerequisite to the necessity of a discharge of the liabilities of said bank, and the court determines that those reasons are sufficient, the levy, the assessments, and the collection of such assessments may then be made by said officer, and not until then. It is difficult to apply a judicial scalpel and cut in twain that which is new and that which is old, but the granting of the relief in the case in the subsequent order at the hearing upon the motion for dissolution is so changed, in substance and in effect, effectuating such a preponderating influence upon the affairs of the bank, different from that first granted in chambers, upon the application, in the first order of the court, that we are prone to say that this is such a new order, granting, in substance, such different relief, that the statute permitting appeals grants the jurisdiction to this court for the purpose of reviewing this matter. We concede, of course, on account of the phraseology of this statute, as has been often decided, that an appeal will not lie from an order to dissolve a temporary injunction. The operative effect of this order is to constitute a prerequisite showing to the district court, based upon certain grounds, a condition precedent to the right of collecting, or attempting to collect, any money due by said stockholders, which compels the commissioner of banking to go to court, which is a restraint in its injunctive features, commanding and requiring the things to be done, different from any relief theretofore prayed for, so that the substance of the relief and the nature and character of the restraint is new and independent.

In the cause of Baumberger v. Allen, 101 Tex. p. 356, 107 S. W. 526, the Supreme Court of this state, speaking through Justice Brown, inferentially held that, if the continuation of

an old injunction was, in effect, the granting of a new writ (at least it is deducible from that opinion), the Court of Civil Appeals would have jurisdiction to consider the appeal.

[5, 6] Upon the merits of this appeal we think the order at the hearing upon the motion to dissolve, granting the relief, is improper for the following reason: Without setting out specific provisions of the national bank act, and detailing analogous provisions of the state act, in regard to state banks, however, upon an inspection of same, we think it was the purpose of the Legislature of this state, to a considerable extent, to follow the trend of the national act, unnecessary to particularize, except to say that section 5234 of the national act (U. S. Comp. St. 1901, p. 3507) provided, among other provisions, that the federal Comptroller (where a national bank is in the hands of a receiver) "may, if necessary to pay the debts of such association (meaning a national bank), enforce the individual liability of the stockholders," and that article 459 of the Acts of the 31st Legislature, 2d Ex. Sess. c. 15, prescribes that "the commissioner may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders."

In the case of Kennedy v. Gibson, 75 U. S. (8 Wall.) page 505, 19 L. Ed. bottom page 478, the Supreme Court of the United States said:

"It is for the Comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and, if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him. This action (making the assessment) on his part is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of the suit by the receiver. * * * It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended with large losses by insolvency and otherwise, in the intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases cannot be foreseen. * * * A speedy adjustment is necessary to the efficiency and utility of the law; the interest of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute that any surplus which may remain after satisfying all demands against the association shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered."

The Supreme Court of the United States has uninterruptedly, without the necessity of citations, adhered to the rule announced in the Kennedy-Gibson Case; and when the Legislature of this state adopted the act of the federal Congress with reference to the particular question under discussion, it adopted the construction by the Supreme Court of the United States given to the federal act. If there is something incorporated into the statute, or if there is a legislative purpose exhibited in any act germane to the same subject-matter, indicating that the construction given by the courts of the country, from which the act was borrowed, should not prevail, the uniform construction given to the act borrowed does not prevail. There is nothing indicated, however, in the acts of the Legislature pertaining to this subject-matter that any different rule of construction should prevail with reference to the statute under consideration; hence the settled and uniform construction by the Supreme Court of the United States is a part of this law. Morgan v. Davenport, 60 Tex. 230.

The orders of the trial court in both cases, 671 and 676, are vacated and set aside, with the further order that the appellee pay all costs of both appeals.

## On Motion for Rehearing.

The appellee presents the case of Cheney v. Scharmann, 145 App. Div. 456, 129 N. Y. Supp. p. 994, decided by one of the Supreme Courts of New York, as in conflict with the ruling announced by this court in construing our banking law, as to the power of the commissioner to make and maintain an assessment against the stockholders of a state bank while the bank is in the process of administration and liquidation. The similarity of the New York statute, with the construction of the New York court upon the same, makes the opposition of the two rulings clear cut; but the settled construction of the United States Supreme Court, noted in our main opinion, according to our view, is so much more compatible with a wise public policy as to the administrative features of the law, operating upon a bank in the settlement of its affairs in the hands of the government, that this court has not the slightest hesitancy in refusing to follow the New York court, thereby adopting the principles of the federal Supreme Court as to the meaning, policy, and purpose of the law. If the law is a borrowed law upon the main features affecting the issue involved, the argument in reality should be ended; the construction of the Supreme Court of the United States is a part of the law. As to the power of our banking commissioner, in comparison with the power of the federal Comptroller in charge of a national bank, authorizing him to enforce the additional liability of a stockholder, when necessary to pay the debts of the corporation, the law is identical, and also embraced in a section of our banking act containing other provisions upon other matters, in substance the same as the federal act; and we believe it is indisputable that this act was borrowed from the federal law.

[7] It is also clear that, as to the immedi--

ate provisions under consideration, the New York act, with some additional features, is the same as the federal law upon cognate subjects; hence an interpretation of the New York law by the New York court, in this instance subsequent to the passage of our act, should be very controlling as to the policy of the law, and as to the wisdom of its interpretation, before a Texas court could, or should, even consider overruling the interpretation by the courts of the country from which the act was borrowed; and when, as it appears to us, that such a construction is inimical to an expeditious administration, obstructing the settlement of the affairs of a bank in the hands of the government, and which would subordinate the interests of the creditors of the bank to the interests of the stockholders, it is with an unhesitating conviction that such an interpretation, enunciating such a policy is refused by us. It is the stockholders' bank which has become delinquent, and with reference to which the law makes it a part of his contract to pay the debts by his increased liability when the default occurs; and then to say that the necessity to pay is to be a litigated question, when the bank is in default, and that the courts and juries of the country are to find this necessity by balancing the reliable assets and the proper liabilities of the institution, for the purpose of finding the deficit, and thence determining the criterion of the liability of the stockholders and the amount of the assessment, is to our minds a construction retarding the very purpose of an expeditious administration and settlement of a bank's affairs, and adds uncertainty to insolvency, and which by delay extends the avenue of escape and evasion. The appellee asserts, however, that the liability feature of our statute imposes a secondary liability, while the federal statute burdens the stockholder with a primary liability, and this asserted difference distinguishes the rights of the stockholders when called upon to pay. We do not deem the solution of this question in the slightest as any material aid whatever in the construction of the law as to the finality of the assessments made by the commissioner. We will say, however, that under the national bank act, when a bank refuses to pay its circulating notes, or when, on account of a violation of the law by its directors, a national bank shall have been dissolved and its franchise forfeited, or when a creditor is the holder of an unsatisfied judgment against the bank, or whenever the Comptroller is satisfied of the insolvency of an association, a receiver may be appointed by the Comptroller, and such receiver, under the directions of the Comptroller, may, if necessary to pay the debts of such association, enforce the personal liability of the stockholders. The technical and legal liability of the stockholders of a national bank for the debts of the bank is to the Comptroller for the benefit of the creditors.

"Creditors must seek their remedy through the Comptroller in the mode prescribed by the statute; they cannot proceed directly in their own names against the stockholders or debtors of the bank. The receiver is the statutory assignee of the association, and is the proper party to institute all suits." Kennedy v. Gibson, 75 U. S. (8 Wall.) 506, 19 L. Ed. 479.

Of course, there may be a suit in equity instituted by the creditors against the stockholders of a national bank when there is a voluntary liquidation of the bank's business by its directors, under another provision of the national banking law. In that character of litigation we assume that a creditor who brings a suit against the stockholders of a national bank does so because the bank refuses to pay its debts; and, as a practical question, the enforcement of the liability would never arise unless occasioned by default; and, as a further practical question, when a national bank is in the hands of a receiver—involuntary liquidation—such a condition would generally arise on account of the bank having failed or refused to pay its debts. This attempted distinction of primary and secondary liability only tends to confuse. Secondary to what? If you say it is secondary, in the sense that the commissioner has to await his collection and realization of the assets of the bank, and their application to the debts to determine the deficit, and then determine the amount owing by the stockholders, such would be intolerable. If you say it is secondary in the sense that the necessity for the enforcement of the liability is required to be first litigated by the balancing of good assets with the debts of the bank, the language of the Supreme Court of the United States, in the case of Kennedy v. Gibson, cited in the main opinion, is, to us, so unanswerable as that repetition is unnecessary. We assume that the default of the bank in the payment of its debts has occurred; otherwise the petitioner in this injunction suit would have alleged that no default had occurred.

The case of Alsop v. Conway, 188 Fed. 575, 110 C. C. A. 373, decided by the Circuit Court of Appeals of the Sixth Circuit, is of no assistance to the appellee in this matter. That court did hold, construing the Kentucky statute, that:

"Although it is alleged in the bill that the entire liability is necessary to be enforced in order to enable payment in full to creditors, every stockholder is at liberty to contest this allegation."

However, the immediate provision under consideration here giving the commissioner of banking of this state the power to enforce liability of the stockholders is evidently not in the Kentucky statute, as none was adverted to by the court in its consideration of that cause; and we presume that the absence of such a provision occasioned the following language of the circuit judge in that case:

"We have not overlooked the settled course of decisions that actions for the recovery of the full statutory liability under the national banking act must be had at law. Casey v. Galli, 94

U. S. 673, 24 L. Ed. 168; U. S. v. Knox, 102 U. S. 422, 26 L. Ed. 216. But suits for collection under the national banking act differ from the proceedings before us in two important respects: First, that under the national banking act the question whether the assessments shall be for 100 per cent. or less than the full statutory liability rests entirely in the discretion of the Comptroller; * * * and, second, the administration and distribution of the funds collected is not had in the suit for their collection, but is carried on by the Comptroller independent of judicial proceedings."

Under our law, as well as under the federal law, upon the settlement of the affairs of a state bank, after all collections have been made and an excess exists, the amount unexpended, after the payment of expenses, reverts to the stockholders.

The motion for rehearing is in all things overruled.