## BEAUMONT IRRIGATING CO. et al. v. LAKE OIL CO. et al.  (No. 1567.)

Court of Civil Appeals of Texas.  Beaumont.
Feb. 7, 1928.

Rehearing Denied Feb. 29, 1928.

**1. Appeal and error ⊜⇒1—Right of appeal from interlocutory order is purely statutory.**

The right of appeal from any interlocutory order must come, if at all, from the express terms of the statutes.

**2. Appeal and error ⊜⇒71(3)—Interlocutory order refusing to modify temporary injunction granted on agreement of parties held not appealable (Rev. St. 1925, art. 4662).**

Rev. St. 1925, art. 4662, authorizing appeal from order granting or refusing a temporary injunction, or granting or overruling a motion to dissolve temporary injunction, *held* not to authorize appeal from interlocutory order refusing to modify or change the then existing temporary injunction which had been granted on agreement of the parties, and, there being no other statute authorizing such appeal, the order was not appealable.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit by the Beaumont Irrigating Company and another against the Lake Oil Company and others.  From an interlocutory order refusing to modify or change the terms of a temporary injunction previously granted, plaintiffs appeal.  On defendant's motion to dismiss appeal.  Appeal dismissed.

A. D. Lipscomb, of Beaumont, for appellants.

J. A. McNair and G. P. Dougherty, both of Houston, and F. J. & C. T. Duff, R. E. Masterson, and C. A. Toler, all of Beaumont, for appellees.

HIGHTOWER, C. J.  This is an appeal from an interlocutory order of the district court of Jefferson county (Sixtieth judicial district), refusing to modify or change the terms and provisions of a temporary injunction which had theretofore been granted and which was in full force and effect at the time the interlocutory order refusing to change or modify it was made.  After this appeal was perfected the appellees Lake Oil Company et al. filed their motion in this court praying this court to dismiss the appeal on the ground that this court is without jurisdiction to entertain it.  In other words, appellees in the motion to dismiss contend that the interlocutory order here appealed from, refusing to modify or change the temporary injunction then in force and effect, is not appealable, and that, therefore, this court is without jurisdiction to entertain the attempted appeal.  After careful consideration of the motion, which was taken with the case upon

submission, we have reached the conclusion that it must be sustained.  A statement, therefore, at length of the pleadings of the parties becomes unnecessary, since we are precluded from determining any question in the case other than this court's jurisdiction to entertain the appeal.

This litigation has been pending in the court below since October 6, 1916.  At that time the appellants here, Beaumont Irrigating Company and J. E. Broussard and the Neches Canal Company, as plaintiffs, filed their petition in the court below against the Lake Oil Company and a number of other oil companies and oil operators, as defendants, praying for a temporary injunction enjoining the defendants from causing or permitting salt water and other foreign and poisonous substances from oil wells operated by defendants in the oil fields of Sour Lake, Saratoga, and Batson, in Hardin county, to escape and flow into Pine Island bayou, a fresh-water stream in Hardin county.

Very briefly stated, the petition for injunction alleged, in substance, that the Beaumont Irrigating Company and the Neches Canal Company were corporations duly chartered and organized under the laws of this state for the purpose of irrigating lands for the growing and production of rice, and that they were the owners of and were operating canals by means of which they were taking and were authorized to take and carry fresh water from Pine Island bayou for the purpose of irrigating their lands and the lands of others in the growing and production of rice, and they alleged that they were riparian owners on Pine Island bayou, and that they had been operating their business as canal companies for many years and had been and were at that time, by means of their canals, carrying fresh water from Pine Island bayou to their rice farms and the rice farms of many others in that vicinity, and that they were authorized and entitled to continue such business, both in their own interests and in the interest of other rice farmers dependent upon their canals for fresh water from the stream of Pine Island bayou.  The plaintiff J. E. Broussard made substantially the same claim in his individual right; that is to say, he alleged, in substance, that he was a riparian owner on Pine Island bayou and a rice farmer, and that he was engaged in the business of raising rice, and that his rice farms were dependent upon getting water from the Beaumont Irrigating Company's canal, which carried water from Pine Island bayou, and that only fresh water was suitable for the irrigation of lands planted to rice.  All the plaintiffs alleged, in substance, that the business of rice farming had been profitable for a number of years while they were able to get fresh water from Pine Island bayou, but that the defendant oil companies

and operators in the oil fields of Sour Lake, Batson, and Saratoga had caused to flow and permitted to flow from oil wells operated by them salt water and other poisonous substances into the stream of Pine Island bayou, and were continuing to permit salt water and other poisonous substances to flow into Pine Island bayou in such quantities that the bayou was practically destroyed as a source of fresh water, and was no longer fit and could not be used by plaintiffs for irrigation purposes, and that on account thereof their rice farming business had been practically destroyed and would continue to be destroyed if defendants were permitted to continue to pollute the waters of Pine Island bayou with salt water and other poisonous substances, as they were doing. The plaintiffs prayed for a temporary injunction enjoining the defendants from further permitting or allowing salt water and other foreign substances to escape from their wells and flow into Pine Island bayou, and that upon final hearing the temporary injunction be made permanent. Thereafter, from time to time, the plaintiffs filed what they designated "supplemental petitions," containing substantially the same allegations as contained in the original petition, but each time making new parties defendant. After the second supplemental petition was filed, a temporary injunction was granted, by the terms of which the defendants were enjoined from causing or permitting salt water and other poisonous substances to flow into the stream of Pine Island bayou, as prayed by the plaintiffs.

This situation continued until July 11, 1917, at which time the plaintiffs and the defendants came before the court and announced that they had reached an agreement, by the terms of which the defendants should be prohibited and enjoined from allowing or permitting salt water or other poisonous substances to flow into the stream of Pine Island bayou at any time between the 1st day of February and the 1st day of September of each year, but that under the terms of the agreement between the parties defendants should be permitted to allow salt water and other substances from their oil operations to flow into Pine Island bayou between the 1st day of September and the 1st day of February of each year. It was further agreed by the parties at that time that the court should appoint an inspector, whose duty it should be to see that the defendants lived up to their agreement and to keep watch on the situation and report to the court any breach of the agreement by defendants. It was further agreed by the parties at the time that the inspector appointed by the court should be paid a salary by defendants for his services as inspector, and that upon final disposition of the case the amount of the salary paid by the defendants should be considered a part of the costs of the suit.

When it was made known to the court that the plaintiffs and the defendants had reached the agreement as above stated, the court rendered a judgment in accordance with the terms of the agreement, and the same was entered in the minutes of the court formally as an agreed judgment between the parties. The agreed judgment had this further provision:

"This court retains jurisdiction of this cause and reserves the right at any time to change, alter, modify, suspend, or dissolve this injunction or extend and enlarge the time within which this restraining order is to be in force and effect. Upon written motion by either party giving the opposite parties, and each of them, a written notice thereof 10 days before the hearing, this court reserves the right to make and enter such orders as it may deem proper and best to meet the facts and exigencies at the time. This order shall remain and continue in full force and effect until modified, changed, or amended by order of this court."

Under the agreed order and judgment of the court as shown above, the defendants continued their oil operations in the Sour Lake, Batson, and Saratoga oil fields, and permitted salt water and other substances produced from their oil operations to flow into Pine Island bayou during the period of the year that they were permitted to do so by the agreed judgment, and the inspector appointed by the court continued to perform his duties as provided by the terms of the agreed judgment until the early part of May, 1925, when the appellants here, Beaumont Irrigating Company and J. E. Broussard, filed in the court below what they designated as their "twelfth supplemental petition," but in this petition the Neches Canal Company did not join with appellants. There was no material change in the allegation in the twelfth supplemental petition from those that were contained in the former petitions, except that it was alleged, in substance, in this petition that the relief that was afforded appellants by the terms of the agreed judgment of July 11, 1917, was inadequate for their protection, and that the agreed order and judgment of July 11, 1917, by the terms of which the defendants were permitted to let salt water and other substances flow into Pine Island bayou, should be so changed and modified as to prohibit and enjoin defendants from permitting salt water and other poisonous substances to flow into Pine Island bayou at any time during the entire year. And, in addition to this change made by the twelfth supplemental petition, appellants further alleged that, on account of the wrongful and unlawful acts and conduct on the part of appellees in flowing and permitting to flow salt water and other poisonous substances into Pine Island bayou, they had sustained damages in the loss of rice crops and also that their lands themselves had been greatly and permanently damaged. The prayer was, in substance, that the court

so modify and change the order and temporary injunction entered by agreement of the parties on July 11, 1917, as to prohibit and enjoin appellees from causing, permitting, or allowing salt water or other poisonous substances to flow from their oil operations into Pine Island bayou during any period of the year. Some time in June, 1925, a hearing was had upon the twelfth supplemental petition as to the prayer for modification, but at that time the court made no further order in the matter. Later on, in the early part of March, 1927, appellants urged and insisted that the court act upon the prayer contained in their twelfth supplemental petition and make an order upon the same. On March 21, 1927, the parties came before the court, and further and additional evidence was then heard touching the prayer and application for change and modification of the agreed order for the temporary injunction of July 11, 1917, and upon conclusion of this hearing the court announced that he would not grant any modification or change of the agreed judgment of July 11, 1917, but that the court would retain jurisdiction of the case for the purpose of granting further relief to appellants whenever there should be found a necessity for it. The court thereupon duly entered his order and judgment refusing to modify or change the temporary injunction, as before stated, expressly stating in the order and judgment that there was no necessity for any change or modification as prayed by appellants, and that the court had reached this conclusion upon the evidence heard upon the application for the change. It is from this order refusing to modify or change the agreed judgment and order of July 11, 1917, that this appeal is prosecuted.

[1, 2] As stated by counsel for appellees in their informal brief in this case, no appeal was permitted by our statute from an order granting or refusing a temporary injunction or from an order dissolving such an injunction prior to 1907. It is held by all of our appellate courts that the right of appeal from any interlocutory order must come, if at all, from the express terms of the statute. Our statute, article 4662, as amended in 1919, reads as follows:

"Any party to a civil suit wherein a temporary injunction may be granted or refused or when motion to dissolve has been granted or overruled, under any provision of this title, in term time or in vacation, may appeal from such order or judgment to the Court of Civil Appeals by filing the transcript of such case with the clerk of the said appellate court not later than twenty days after the entry of record of such order or judgment."

The statute just quoted must govern in determining whether the appellants had the right to appeal from the interlocutory order of March 21, 1927, refusing to modify or change the then-existing temporary injunc-

tion which had been granted upon the agreement of the parties. It is plain from the statute just quoted that an order in term time or in vacation granting a temporary injunction or refusing to grant a temporary injunction or granting a motion to dissolve a temporary injunction or overruling a motion to dissolve a temporary injunction may be appealed from. It is equally clear, however, that this statute makes no provision for appeal from an interlocutory order merely refusing to modify or change the terms or provisions of a temporary injunction. Clearly, the interlocutory order appealed from in this instance was not the granting of a temporary injunction, nor was it a refusal to grant a temporary injunction, nor was it an order sustaining a motion to dissolve an injunction, nor was it an order overruling a motion to dissolve an injunction. We do not understand that learned counsel for appellants contends otherwise. He does contend, however, that the relief that was afforded appellants under the agreed judgment of July 11, 1917, has been since found to be inadequate for their protection, and that they are entitled to complete and adequate injunctive relief, regardless of the nature of the order appealed from. We repeat that the right of appeal from any interlocutory order must come from the statute, and that, since there is no such statutory right in appellants to appeal from the order from which they are here attempting to appeal, they can have no such right, and this court has no jurisdiction to entertain this attempted appeal. We think that by the clearest analogy the following cases support our conclusion on this point: Baumberger et al. v. Allen, 101 Tex. 352, 107 S. W. 526; Powdrill v. Powdrill (Tex. Civ. App.) 134 S. W. 272; Welborn v. Collier (Tex. Civ. App.) 151 S. W. 655. It is true that these decisions were rendered prior to the enactment of the present statute just quoted, but we repeat that by the clearest analogy they support our conclusion in this matter, and it would serve no useful purpose to enter upon a discussion of these authorities. In support of their contention that they have the right to appeal from the order as they have attempted to do, counsel cite the following authorities: Mendelsohn v. Gordon (Tex. Civ. App.) 156 S. W. 1149; Collier v. Smith (Tex. Civ. App.) 169 S. W. 1108; Jowell v. Lamb (Tex. Civ. App.) 207 S. W. 988. The decision in the first case was by the Galveston court, and a writ of error was refused, and it is the strongest case, or rather more nearly in point than either of the cases cited by appellants in support of their right of appeal in this case. In the Mendelsohn-Gordon Case the dispute was between members of a religious society or organization, and the minority faction in that society sought an injunction against the majority faction and obtained a temporary writ of injunction, as prayed for. This temporary injunction was very

broad and sweeping in its terms, but upon application the trial court thereafter twice modified the order for temporary injunction as first made. In making the second order of modification or change, the trial judge practically set aside and dissolved the injunction that he had granted, and it was, therefore, held by the Galveston court that the effect of the second order of modification or change was to dissolve the temporary injunction, and that, therefore, the appeal would lie under the terms of the statute. We have · carefully considered the Mendelsohn Case, and it is clear to us that by the second order of modification or change the trial judge undid and set aside everything he had done with the exception that he did prohibit the society from expelling the plaintiffs. No useful purpose would be served by further discussion of this case. The other cases cited by counsel for appellants, as we have shown, have in our opinion. no application to and do not support even by analogy the contention that the order here appealed from was such an order as gave rise under our statute to an appeal.

It follows from these views that the appeal in this case must be dismissed for lack of jurisdiction in this court to entertain it.

Appeal dismissed.